# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

)
JINKO SOLAR IMPORT AND EXPORT CO., )
LTD. ET AL., )
            )
            Plaintiffs and )
            Consolidated-Plaintiffs, )
            )
       and )
            )
JA SOLAR TECHNOLOGY YANGZHOU )
CO., LTD. ET AL., )
            )
            Plaintiff-Intervenors, )
            )
       v. )
            )
UNITED STATES, )
            )
            Defendant, )
            )
       and )
            )
AMERICAN ALLIANCE FOR SOLAR )
MANUFACTURING, )
            )
            Defendant-Intervenor. )
_____)

**Consol. Court No. 22-00219**

**Before:** Hon. Claire R. Kelly, Judge


## REPLY BRIEF OF CONSOLIDATED PLAINTIFFS CHANGZHOU TRINA SOLAR CO., LTD. ET AL.

Robert G. Gosselink
Jonathan M. Freed
Kenneth N. Hammer
**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C. 20003
(202) 223-3760

Counsel to Consolidated Plaintiffs Trina Solar Co., Ltd., Trina Solar (Changzhou) Science & Technology Co., Ltd., Changzhou Trina Solar Yabang Energy Co., Ltd., Turpan Trina Solar Energy Co., Ltd., Trina Solar (Hefei) Science & Technology Co., Ltd., and Changzhou Trina Hezhong Photoelectric Co., Ltd.

Dated:  November 13, 2023

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................ ii

I.  INTRODUCTION ................................................................................... 1

II.  ARGUMENT ......................................................................................... 2

    A.  COMMERCE ABUSED ITS DISCRETION BECAUSE IT
        FAILED TO CONSIDER THE CONSEQUENCES OF
        ACCEPTING TRINA'S SEPARATE RATE
        CERTIFICATIONS AFTER THE DEADLINE ......................... 2

    B.  APPLYING THE "EXTRAORDINARY CIRCUMSTANCES"
        STANDARD TO ALL RESPONDENTS IS ARBITRARY,
        CAPRICIOUS, AND OTHERWISE CONTRARY TO LAW .. 12

    C.  COMMERCE'S DENIAL OF A SEPARATE RATE TO THE
        TRINA COLLAPSED ENTITY IS NOT SUPPORTED BY
        SUBSTANTIAL EVIDENCE ........................................................ 15

III.  CONCLUSION ...................................................................................... 20

## Cases

*Grobest & I-Mei Indus. (Vietnam) Co., Ltd. v. United States*, 36 CIT 98, 815 F.Supp.3d 1342 (2012) ................................................................... 6, 7

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990) .............6

*Timken U.S. Corp. v. United States*, 434 F.3d 1345 (Fed. Cir. 2006) ...............6

*NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995)................9

*China Mfrs. All., LLC v. United States*, 1 F.4th 1028 (Fed. Cir. 2021)............ 10

*Dongtai Peak Honey Industry Co., Ltd. v. United States*, 777 F.3d 1343 (Fed Cir. 2015) ................................................................................................ 10–12

## Regulations

19 C.F.R. § 351.302(c) .......................................................................................9

19 C.F.R. § 351.401(f) ..................................................................................... 19

## Administrative Determinations

*Modification of Regulation Regarding the Extension of Time Limits*, 78 Fed. Reg. 3,367 (Dep't Commerce Jan. 16, 2013) (proposed rule; request for comments) ...................................................................................................... 13

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 87 Fed. Reg. 38,379 (Dep't Commerce June 28, 2022) (final results of antidumping duty administrative review; 2019–2020) and accompanying Issues and emorandum ...................................................................................................... 17, 18

**REPLY BRIEF OF CONSOLIDATED PLAINTIFFS
CHANGZHOU TRINA SOLAR CO., LTD. ET AL.**

## I.      INTRODUCTION

Consolidated Plaintiffs Trina Solar Co., Ltd., Trina Solar (Changzhou) Science & Technology Co., Ltd. ("Trina Exporting Companies"), and Changzhou Trina Solar Yabang Energy Co., Ltd., Turpan Trina Solar Energy Co., Ltd., Trina Solar (Hefei) Science & Technology Co., Ltd., and Changzhou Trina Hezhong Photoelectric Co., Ltd. ("Trina Non-Exporting Companies") (collectively "Trina"), submit this brief in reply to the September 18, 2023, response briefs filed by Defendant and Defendant-Intervenor, the American Alliance for Solar Manufacturing. *See* Def.'s Resp Pls.' Rule 56.2 Mots. J. Upon Agency R., ECF No. 51, Sept. 18, 2023 ("Def.'s Resp. Br."), Def.-Intervenor American Alliance for Solar Manufacturing's Resp. Br., ECF No. 52, Sept. 18, 2023 ("D-I Resp. Br.").

For the reasons discussed below, the United States Department of Commerce ("Commerce") abused its discretion by failing to consider the potential burden of accepting the separate rate certifications ("SRC") submitted on behalf of the Trina Non-Exporting Companies beyond the deadline of which Trina was not aware. Alternatively, even if Commerce did not abuse its discretion in refusing to accept the SRC filed on behalf of the Trina Non-Exporting Companies, Commerce's regulation requiring that an

interested party demonstrate "extraordinary circumstances" before

Commerce will consider an extension request after the deadline is arbitrary,

capricious, and otherwise contrary to law.  Finally, Commerce's denial of a

separate rate to the Trina Exporting Companies based on the rejection of

SRCs filed on behalf of the Trina Non-Exporting Companies is not supported

by substantial evidence for the reasons discussed below.

## II.    ARGUMENT

### A.    COMMERCE ABUSED ITS DISCRETION BECAUSE IT FAILED TO CONSIDER THE CONSEQUENCES OF ACCEPTING TRINA'S SEPARATE RATE CERTIFICATIONS AFTER THE DEADLINE

In seeking to justify Commerce's exercise of discretion, Defendant

accentuates the deficiencies in Commerce's analysis by focusing exclusively

on Commerce's generalized prerogatives to administer case deadlines—and

the potential systemic consequences if deadlines are not strictly enforced—

while ignoring the particularized facts, which demonstrate that Commerce

could review the additional SRCs submitted on behalf of the Trina Non-

Exporting Companies without impeding Commerce's ability to complete this

administrative review.

Defendant's response also highlights the clear punitive impact

Commerce's determination, which prioritizes the potential deterrent effect

upon other interested parties—even those that may find themselves in

circumstances very factually distinct from Trina's position in this

administrative review—without considering the minimal temporal and

substantive burden or any other mitigating factors highlighted by Trina in its

initial brief in support of its Rule 56.2 motion.  *See* Mem. Support of Mot. J.

Upon Agency R. of Consolidated Pls. Trina Solar Co., Ltd., Trina Solar

(Changzhou) Science & Technology Co., Ltd. Changzhouu Trina Solar Yabang

Energy Co., Ltd., Turpan Trina Solar Energy Co., Ltd. Trina Solar (Hefei)

Science & Technology Co., Ltd. and Chgzhou Trina Hezhong Photoelectric

Co., Ltd. 23–31, ECF No. 35, Mar. 24, 2023 ("Trina Br.")  Trina acknowledges

that Commerce is entitled substantial deference in enforcing its

administrative deadlines.  Nevertheless, Commerce cannot have an

unchecked prerogative  to enforce those deadlines without any consideration

of the potential impact upon the proceeding.

Commerce abuses its discretion where, as here, it relies exclusively

upon generalized systemic notions of efficient case administration without

engaging the particularized impact that accepting Trina's late-filed

submission would have upon its conduct of the instant administrative review.

This is particularly true where, as here, the burden imposed upon Commerce

and the interest in finality was minimal, the strong interests of accuracy and

fairness embodied in the antidumping ("AD") statute necessarily outweigh

the burden placed upon Commerce and finality interests.  Because Commerce

abused its discretion in refusing to consider the SRCs filed on behalf of the

Trina Non-Exporting Companies, the Court should direct Commerce to either

accept the SRCs and reconsider its separate rate determination or remand to

Commerce to reconsider its rejection of those SRCs while giving due

consideration to these facts relevant to the conduct of the instant

administrative review.

Defendant argues that Commerce "considered both the specific and

general circumstances surrounding Trina's untimely submission and

extension request." Def.'s Resp. Br. 79. But, the Defendant references only

Commerce's recitation of Trina's arguments before its response as evidence

that Commerce considered the specific impact of accepting the SRCs after the

deadline. *Id.* at 84 (arguing that Commerce considered the full scope of

Trina's arguments about mitigating circumstances by citing Commerce's

repetition of Trina's arguments before responding to those arguments). Trina

highlighted in its 56.2 brief that the temporal burden of reviewing the SRCs

submitted on behalf of the Non-Exporting Trina Companies was minimal

because Commerce had 114 days from the date the SRCs were submitted and

the date the *Preliminary Results* were issued to review the SRCs. See Trina

Br. 22–24 (*citing* Letter from Trade Pacific PLLC to Sec'y Commerce, re:

"Renewed Request to Accept Separate Rate Certifications" at 4–12, P.R. 368

(Sep. 14, 2021)). Even if that time frame could have proved insufficient—a

finding that Commerce never made—nothing prevented Commerce from
considering the SRCs during the remaining 187 days before Commerce issued
the *Final Results* on June 21, 2022. Moreover, Trina describes in detail the
inconsequential substantive burden of reviewing the SRCs submitted on
behalf of the Non-Exporting Trina Companies. *See id.* at 24–27. Finally,
Trina discussed how Commerce could not have had concerns that reviewing
the SRCs submitted on behalf of the Non-Exporting Trina Companies could
have impacted the calculation of other respondents' AD rates. *See id.* at 27–
29.

Defendant points to no language in Commerce's issues and decision
memorandum where Commerce considers the specific impact upon
Commerce's ability to complete this administrative review within its
statutory deadlines. To the contrary, Defendant justifies Commerce's
rejection of the SRCs by highlighting Commerce's focus on Trina's
"inattentiveness" in not adequately monitoring the docket to ensure that it
timely responded to Commerce's supplemental questionnaire or, otherwise,
timely requested an extension of time in advance of the deadline. *Id.* at 78.

Defendant implies that Commerce simply weighed the evidence
differently than Trina would have preferred by finding that Trina's excuse for
not responding did not meet the extraordinary circumstances standard. *See
id.* But, even though Commerce's regulation allows it to consider whether the

extraordinary circumstances prevented Trina from filing a timely request, Commerce's statutory mandate to administer the AD law—which is remedial and not punitive—requires that Commerce also consider whether the "interests of accuracy and fairness outweigh the burden placed on {Commerce} and the interest in finality." *See Grobest & I-Mei Indus. (Vietnam) Co., Ltd. v. United States*, 36 CIT 98, 122, 815 F.Supp.3d 1342, 1365 (2012) (*citing Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) and *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006)).  As described in Trina's 56.2 brief, Commerce failed to consider that accepting these submissions beyond the deadline could not have significantly impeded its ability to complete the administrative review.  See Trina Br. 23–31.

Defendant and Defendant-Intervenor dismiss these statutory limitations on Commerce's authority to refuse to consider information filed beyond the deadline by focusing on the distinct standard Commerce applied in rejecting the late-filed submissions submitted by the interested party in *Grobest*.  Def.'s Resp. Br. 79–80 (noting that *Grobest* predates Commerce's adoption of the "extraordinary circumstances" standard in revision its regulations in 2013), D-I Resp. Br. 68.  As an initial matter, Commerce's amended regulation cannot possibly overcome or contradict the statutory mandate to administer the AD law in a manner that is remedial and non-

punitive. Indeed, in *Grobest*, the Court did not ground its holding that Commerce abused its discretion in rejecting the respondent's late-filed submission in Commerce's misapplication of the "good cause" standard that was in effect prior to the 2013 revision of Commerce's regulation. Rather, the Court found that Commerce's discretion in rejecting untimely filings is necessarily limited by the remedial, non-punitive, purpose of the AD statute, which requires Commerce to consider the burden of accepting the late submission and the need for finality in the final results stage. *See Grobest*, 36 CIT at 122, 815 F.Supp.3d at 1365 (stating that the remedial purpose of the AD statute requires that it to balance the interests of accuracy and fairness against the burden placed on Commerce in accepting the late-filed submissions where Commerce exercises its discretion to set and enforce its deadlines).

As discussed above, and in greater detail in Trina's 56.2 brief, Commerce did not consider these factors in denying Trina's request. *See* Trina Br. 23–31. Commerce cannot possibly meaningfully weigh the interests in finality and the burden against its interests in efficient administration—and thus necessarily abuses its discretion—where it fails to consider the impact of considering the late-filed submission upon the conduct of the administrative review.

Next, Defendant argues that the interest of efficient administration of the AD laws—and the mere possibility that future untimely extension requests may follow—justifies Commerce's rejection of the SRC's filed on behalf of the Trina Non-Exporting Exporting Companies.  See Def.'s Resp. Br. 80–81 (grounding Commerce's explanation in the notion that time limits aid in the administration of the AD laws and the *unrealized potential for* "untimely extension requests such as Trina's 'can imped {Commerce's} ability to conduct AD and {countervailing duty (CVD)} proceedings in a timely and orderly manner.'").  Defendant likewise justifies Commerce's failure to consider the negligible burden upon Commerce that accepting the late-filed SRCs would pose by citing uniformity of administration and the potential for disruption of case planning in other cases.  Id.  Trina does not contest that Commerce may consider the general impact upon its administration of AD proceedings.  But, allowing Commerce to consider the general impact on Commerce's administration of AD proceedings even where the actual impact of the specific proceeding is negligible empowers Commerce with an essentially unchecked authority—which arises only from Commerce's general authority to administer the AD law and not from any affirmative power to discipline granted by Congress—to punish late-filers to deter future late filings.

Defendant writes off Trina's reliance on jurisprudence concerning the remedial nature of Commerce's authority to apply adverse facts available with an adverse inference ("AFA") as inapposite because Commerce denied Trina a separate rate based on the missing SRCs rather than the application of AFA. Def.'s Resp. Br. at 80. But Trina does not argue that Commerce applied AFA to deny Trina a separate rate. Rather, Trina references these cases to demonstrate that even where Commerce is granted the affirmative power to punish or deter by statute, Commerce's discretion must be balanced against the overall goal of the AD statute, which is remedial rather than punitive. See Trina Br. at 20. Commerce's authority to specify procedures to obtain information stems from its regulatory power in the absence of a contrary statutory directive. Commerce's discretion to apply deadlines and set consequences for missing deadlines pursuant to 19 C.F.R. § 351.302(c) is necessarily limited by at least the same concerns and limitations upon its exercise of discretion as where it explicitly empowered by statute to punish. See NTN Bearing Corp. v. United States, 74 F.3d 1204, 1207 (Fed. Cir. 1995) (stating that, since Commerce's power to promulgate regulations specifying procedures to obtain information are not required by statute, those procedures "may, in appropriate circumstances, be waived and must be waived where failure to do so would amount to an abuse of discretion"). Therefore, Commerce's discretion to set and enforce deadlines does not excuse

Commerce from balancing the interests of efficient administration of its caseload and deterrence of non-compliance with its deadlines against the impact on this administrative review. Since Commerce failed to weigh the burden against the interest of fair administration altogether, Commerce abused its discretion. *See* Trina Br. 21–22.

Defendant likewise rejects the need for Commerce to consider accuracy and fairness concerns in exercising discretion to reject late filings. Def.'s Resp. Br. 83–84. Defendant cites Commerce's authority to apply the China-wide rate where a company fails to rebut the presumption of government control. *Id.* (*citing China Mfrs. All., LLC v. United States*, 1 F.4th 1028, 1040 (Fed. Cir. 2021) (stating that Commerce has the authority to apply the China-wide rate to a mandatory respondent that failed to rebut the presumption of government control even where using the respondent's collected data in the same administrative review had resulted in a *de minimis* calculated rate)). However, the fact that Commerce may be able to apply a higher rate contrary to collected evidence does not absolve Commerce from considering whether the impact of accepting the late-filed SRCs filed on behalf of the Non-Exporting Trina Companies would outweigh finality or accuracy concerns or avoid the application of an unduly punitive rate.

Next, Defendant argues that the Court's decision in *Dongtai Peak* supports Commerce's refusal to consider the SRCs filed on behalf of the Trina

Non-Exporting Companies.  Def.'s Resp. Br. 82–83.  Defendant elevates the

Court's generalized recitation of presumptions about Commerce's discretion

to enforce its deadlines to unbreakable rules that may be applied without

regard to the factual circumstances surrounding the rejection of late-filed

submission.  *See* Def.'s Resp. Br. 82–83. (*citing Dongtai Peak Honey Industry*

*Co., Ltd. v. United States*, 777 F.3d 1343, 1352 (Fed Cir. 2015)).  However, as

Trina discusses at length in its Rule 56.2 brief, the Court did not ground its

decision in *Dongtai Peak* in some generalized deference or reluctance to

evaluate Commerce's actions in enforcing its deadlines for abuse of discretion

despite accuracy and fairness concerns.  On the contrary, the Court evaluated

Commerce's actions in their factual context and concluded that Commerce

had legitimate concerns as to finality that were sufficient to outweigh

concerns as to the accuracy of the AD rate assigned to the respondent in

question.  *See Dongtai Peak Honey*, 777 F.3d at 1353; *see also* Trina Br. 29–31

(describing in detail the factual circumstances concerning the respondent's

late-filed submission that supported Commerce's decision not to consider a

mandatory respondent's request for retroactive extension of a deadline to

submit a supplemental Section A response where it had not responded in a

timely manner).

        As Trina described on pages 30 to 32 of its Rule 56.2 brief, there were

many factual circumstances relevant to Commerce's balancing of the

interests of efficient administration against the burden of considering the late-filing that required Commerce to engage with and explain its determination to reject Trina's request to consider its late-filed SRCs that are distinct from the considerations before Commerce in *Dongtai Peak*. *See* Trina Br. 30–32. Commerce cannot excuse itself from analyzing the facts of this administrative review by invoking broad authorities recognized in *Dongtai Peak*, particularly since the Court recognized that those facts are relevant to evaluating Commerce's abuse of discretion. Commerce abused its discretion by failing to undertake any analysis of these factual circumstances.

## B. APPLYING THE "EXTRAORDINARY CIRCUMSTANCES" STANDARD TO ALL RESPONDENTS IS ARBITRARY, CAPRICIOUS, AND OTHERWISE CONTRARY TO LAW

The "extraordinary circumstances" standard arbitrarily assumes that all deadlines and information are of equal complexity and relevance in completing the relevant investigation or administrative review. Commerce justifies this strict standard exclusively through a policy goal of encouraging timely extension requests. However, Commerce's regulation fails to consider the significance or nature of the information requested. Therefore, it arbitrarily and capriciously sets the same rigorous standard for all participants without considering that some information may have more impact upon Commerce's conduct of the proceeding than other information.

Specifically, Commerce's single rule fails to consider the relative impact the information requested may have upon Commerce's conduct of the entire proceeding. Where information is discrete and only tied to the interests of a single separate rate respondent, it cannot possibly significantly impact Commerce's general calculation of AD margins for other respondents. Therefore, it is arbitrary and capricious to require the same standard be met to further Commerce's goals of efficiently administering its deadlines and deterring future untimely filings.

Defendant argues that Commerce considered and rejected applying an alternative to the "extraordinary circumstances" standard not only because it would encourage future adherence to its deadlines, but also because adopting an alternative standard would frustrate Commerce's desire to avoid administrative difficulties and expenditure of resources in addressing extension requests. Def.'s Resp. Br. 87 (*citing Modification of Regulation Regarding the Extension of Time Limits*, 78 Fed. Reg. 3,367, 3,368 (Dep't Commerce Jan. 16, 2013) (proposed rule; request for comments)). Yet, the regulation adopts an identically narrow avenue for relief for a party that may be unaware of a deadline without addressing why it is necessary to do so without compromising the policy goal of promoting filing timely extension requests. The regulation unreasonably treats all levels of neglect identically

even where the party in question could not have been encouraged to file a timely request because it was unaware of the deadline.

Commerce never explains why an alternative standard allowing for greater leniency for a smaller class of interested parties whose limited participation in the proceeding has much less capacity to consume resources or prejudice Commerce's conduct of its proceedings. Commerce's explanation that the "extraordinary circumstances" standard is necessary to avoid administrative difficulties and undue expenditure of resources on administering extension requests ignores the likelihood that administering an alternative standard for a very limited grouping of interested parties would significantly reduce the administrative burden upon Commerce without requiring the agency to uniformly apply such a rigorous standard that does not consider whether a party may be unaware of a deadline.

As discussed in Trina's Rule 56.2 brief, Commerce's regulation unreasonably and arbitrarily ignores the consequences of the missed deadline on Commerce's overall conduct of the proceeding in question by evaluating only the circumstances relating to the party's ability to file a timely request while ignoring the reality that the absence of some information will not significantly prejudice Commerce's ability to complete the administrative review. Where, as here, the missing SRC is relevant—if at all—only to make a binary determination of whether Commerce assigns a separate rate or the

China-wide rate to a single non-mandatory respondent, the administrative

burden upon Commerce of considering late-filed extension requests is

significantly diminished in complexity, frequency, and the potential for

secondary consequences upon other respondents.  Commerce's rationale for

adopting a single standard, which is entirely focused on administrability and

deterrence, is significantly weakened in narrower circumstances that impact

only a subset of parties that have significantly less capacity to impede the

progress of an AD proceeding.  Commerce's regulation fails to address why it

is necessary to apply the same standard in all circumstances to serve the

identified policy goals.  Therefore, applying the "extraordinary

circumstances" standard to all respondents in all contexts is arbitrary,

capricious, and otherwise contrary to law.

### C.    COMMERCE'S DENIAL OF A SEPARATE RATE TO THE TRINA COLLAPSED ENTITY IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

Even if Commerce had authority to reject the SRCs filed on behalf of

the Trina Non-Exporting Companies, Commerce's determination to deny the

Trina Exporting Companies—which had filed timely SRCs—a separate rate

is not supported by substantial evidence because Trina followed Commerce's

instructions by filing SRCs on behalf of all exporters to demonstrate that its

export activities during the POR are free from government control.

Commerce has not explained why it is reasonable to carry forward its prior

collapsing determination to penalize the Trina Exporting Companies that

had demonstrated independence from government control where Commerce

has concluded that the facts have changed from prior reviews.  In other

words, Commerce unreasonably applies its practice of not reexamining its

prior collapsing determination—which has the effect of punishing the entire

collapsed Trina entity despite the fact that Trina filed exporters on behalf of

all exporting companies—when Commerce's conclusion regarding

government control over certain companies within the group changes the

factual underpinnings of its prior determination to collapse the Trina

Exporting Companies with the Trina Non-Exporting Companies.

   As Trina argued in greater detail in its 56.2 brief, unlike a mandatory

respondent—for which Commerce calculates an AD rate based on the

respondent's actual data—a separate rate respondent is generally assigned a

weighted average of the AD rates calculated for the mandatory respondents.

In other words, there is no potential for assigning different AD rates to

different companies that comprise a collapsed *separate rate* respondent that

is not individually investigated—and no consequent risk of manipulation to

avoid payment of duties by firms shifting exports through exporters with the

lowest assigned cash-deposit rates—because a *separate rate* respondent's AD

rate is calculated based on other respondents' data.  Trina Br. 52.

Defendant and Defendant-Intervenor argue that it is reasonable for Commerce to require all members of the previously collapsed Trina entity to file SRCs, even where they had no shipments during the POR, because otherwise a non-exporting member that was government-controlled (or became so controlled) could take advantage of an exporting member of a collapsed entity's margin to funnel exports at government-set prices. Def.'s Resp. Br. 71 (citing *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 87 Fed. Reg. 38,379 (Dep't Commerce June 28, 2022) (final results of antidumping duty administrative review; 2019–2020), P.R. 464 ("*Final Results*"), as amended by *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 87 Fed. Reg. 48,621 (Aug. 10, 2022) (amended final results of antidumping duty administrative review, 2019–2020), P.R. 473 ("Amended *Final Results*"), and accompanying Issues and Decision Memorandum for the Final Results of the 2019–2020 Antidumping Duty Administrative Review of Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China, at 70–71, P.R. 455 (June 21, 2022) ("*Final Decision Memo*")), D-I Resp Br. 71. However, as Trina argued in its 56.2 brief, neither Commerce's SRC instructions nor Commerce's practice have consistently required SRCs to be filed by non-exporting members of a previously collapsed entity. <u>See</u> Trina

Br. 46–50.  More importantly, Defendant, Defendant-Intervenor, and

Commerce do not explain why Commerce's related practice of normally

carrying forward collapsing determinations from prior administrative reviews

rather than revisiting the facts underlying such a determination is

reasonable, as applied, in this administrative review.

Even if Commerce's practice of declining to revisit prior collapsing

determinations were reasonable where no record evidence contradicts the

factual basis for the prior collapsing determination, it is not reasonable to do

so where evidence undermines the facts underlying Commerce's collapsing

determination.  Commerce did not explain why it was reasonable for

Commerce to do so in this administrative review, and Defendant does not cite

any case in which Commerce explained why it is reasonable to use facts

carried forward from a prior administrative review that are undermined by

the factual record in the present administrative review, to deny separate rate

status to applicants that had filed timely SRCs demonstrating the absence of

government control.  Commerce rejected SRCs from the Trina Non-Exporting

Companies, which Commerce recognizes were part of the previously collapsed

Trina entity.  Final Decision Memo at 71 (stating that Commerce would not

reverse its collapsing decision from prior segments for Trina and then

separately analyze the separate rates status of the non-exporting and

exporting Trina companies that had been treated as a single entity).  The

logical consequence of Commerce's determination to reject the SRCs filed on behalf of the Trina Non-Exporting Companies is that those non-exporting companies are presumed to be controlled by the government and not by Trina.

In AD proceedings, Commerce collapses two or more "affiliated producers" where producers have production facilities for similar or identical products that would not require substantial retooling of either entity's facilities to restructure manufacturing priorities and Commerce concludes there is a significant potential for manipulation.  19 C.F.R. § 351.401(f).  The factual basis for Commerce's collapsing determination in prior reviews was its finding that Trina Solar Co., Ltd. and the other collapsed Trina entities were under the common control of Trina Solar Co., Ltd., which is the parent company of the Trina Non-Exporting Companies.

Where, as here, Commerce finds that certain entities within the previously collapsed Trina entity are now presumed to be controlled by the government, it is unreasonable for Commerce to rely upon its prior collapsing determination to continue to collapse the Trina entity because the factual basis for that determination has changed.  If the Trina Non-Exporting Companies are presumed to be controlled by the government, then it logically follows that Commerce cannot simply rely on its prior finding that these same companies are controlled by Trina Solar Co., Ltd.  More importantly,

even if the Trina Non-Exporting Companies are presumed to be controlled by

the Chinese government, the record lacks any evidence to support—and the

prior collapsing decision similarly does not support—the conclusion that

those Trina Non-Exporting Companies exercise any control over their parent

company, Trina Solar Co., Ltd.   Commerce cannot simultaneously rely upon

the presumption of Chinese government control to deny the Trina collapsed

entity a separate rate while ignoring that that, as a consequence, the factual

basis for its prior collapsing determination is undermined by that

presumption.   For these reasons, Commerce's determination to rely upon its

prior collapsing determination to deny the entire collapsed Trina entity a

separate rate without revisiting the factual basis for the collapsing

determination is not supported by substantial evidence and otherwise

contrary to law.

## III.   CONCLUSION

For the foregoing reasons Trina respectfully requests that the Court

grant its motion for judgment on the agency record.   Further, Trina

respectfully requests that the Court remand this case to Commerce with

instructions to assign Trina a separate rate and recalculate Trina's AD rate

after making changes necessary to reflect the errors in the *Final Results*

discussed in the memoranda of law and reply briefs filed in support of Jinko

and Risen's Rule 56.2 motions for judgment on the agency record.

Respectfully submitted,

/s/ Jonathan M. Freed
Robert G. Gosselink
Jonathan M. Freed
Kenneth N. Hammer

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C. 20003
(202) 223-3760

Counsel to Plaintiffs Trina Solar Co.,
Ltd., Trina Solar (Changzhou) Science &
Technology Co., Ltd., Changzhou Trina
Solar Yabang Energy Co., Ltd., Turpan
Trina Solar Energy Co., Ltd., Trina Solar
(Hefei) Science & Technology Co., Ltd.,
and Changzhou Trina Hezhong
Photoelectric Co., Ltd.

Dated: November 13, 2023

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

|  |  |
|---|---|
| JINKO SOLAR IMPORT AND EXPORT CO., LTD. ET AL., | ) ) ) ) |
| Plaintiffs and Consolidated-Plaintiffs, | ) ) ) |
| and | ) ) |
| JA SOLAR TECHNOLOGY YANGZHOU CO., LTD. ET AL., | ) ) ) |
| Plaintiff-Intervenors, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| AMERICAN ALLIANCE FOR SOLAR MANUFACTURING, | ) ) ) |
| Defendant-Intervenor. | ) ) |

**Consol. Court No. 22-00219**

**Before:** Hon. Claire R. Kelly, Judge

## CERTIFICATE OF COMPLIANCE

The undersigned counsel at Trade Pacific PLLC hereby certifies that

the Reply Brief of Consolidated of Plaintiffs Changzhou Trina Solar Co., Ltd.

et al., dated November 13, 2023, complies with the word-count limitation

described in the Standard Chambers Procedures. The reply brief contains

4,279 words according to the word-count function of the word-processing

software used to prepare the brief.

Respectfully submitted,

/s/ Jonathan M. Freed
Jonathan M. Freed

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, D.C.  20003
(202) 223-3760

Dated:  November 13, 2023