UNITED STATES COURT OF INTERNATIONAL TRADE
NEW YORK, NEW YORK

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

JINKO SOLAR IMPORT AND EXPORT CO., LTD., *et al.*,

Plaintiffs,

and

JA SOLAR TECHNOLOGY YANGZHOU CO., LTD., *et al.*,

Plaintiff-Intervenors,

v.

UNITED STATES,

Defendant,

and

AMERICAN ALLIANCE FOR SOLAR MANUFACTURING,

Consolidated Defendant-Intervenor.

Consol. Court No. 22-00219

**PLAINTIFF-INTERVENOR BYD (SHANGLUO) INDUSTRIAL CO., LTD.'S COMMENTS ON FINAL RESULTS OF REMAND REDETERMINATION**

HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004
Phone: +1.202.637.5600
Fax: +1.202.637.5910

*Counsel to BYD (Shangluo) Industrial Co., Ltd.*

October 30, 2024

**TABLE OF CONTENTS**

I. ARGUMENT ........ 2

A. THE COURT SHOULD REMAND COMMERCE'S VALUATION OF GLASS 3

B. THE COURT SHOULD REMAND COMMERCE'S VALUATION OF AIR FREIGHT ........ 4

C. THE COURT SHOULD REMAND COMMERCE'S METHODOLOGY FOR CALCULATING RISEN'S RATE FOR FACTS AVAILABLE WITH AN ADVERSE INFERENCE ........ 6

D. THE SEPARATE RATE CALCULATION SHOULD BE REVISED CONSISTENT WITH REVISIONS MADE TO THE MANDATORY RESPONDENT RATES ........ 7

II. CONCLUSION ........ 7

**PLAINTIFF-INTERVENOR BYD (SHANGLUO) INDUSTRIAL CO., LTD.'S COMMENTS ON FINAL RESULTS OF REMAND REDETERMINATION**

Plaintiff-Intervenor BYD (Shangluo) Industrial Co., Ltd. ("Shangluo BYD") hereby submits the following objections to the U.S. Department of Commerce's ("Commerce" or the "Department") Final Results of Redetermination Pursuant to Court Remand (Aug. 29, 2024), ECF No. 90 ("*Remand Determination*").

The *Remand Determination* was issued pursuant to the opinion and order of the Court in this action, *Jinko Solar Import and Export Co., Ltd., et al. v. United States*, Consol. Court No. 22-00219, Slip Op. 24-53 (Ct. Int'l Trade May 1, 2024), ECF No. 85 ("Slip Op. 24-53"). The *Remand Determination* concerns the final results of the 2019-2020 administrative review of the antidumping order on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China. *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China*, 87 Fed. Reg. 38,379 (Dep't Commerce Jun. 28, 2022) (final results of antidumping duty administrative review and final determination of no shipments; 2019-2020) (P.R. 464), and accompanying Issues and Decision Memorandum (June 21, 2022) (P.R. 455), as amended by *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China*, 87 Fed. Reg. 48,621 (Dep't Commerce Aug. 10, 2022) (amended final results of antidumping duty administrative review; 2019-2020) (P.R. 473) (collectively, "*Final Results*"). 1/ The mandatory respondents selected for individual examination in the review are Plaintiffs Jinko Solar Import and Export Co., Ltd. et al. and certain of its affiliates (collectively, "Jinko") and Consolidated Plaintiff Risen Energy Co., Ltd. ("Risen").

---

1/ "P.R. __" references documents in the initial public record of the administrative review at issue in this case.

## I. ARGUMENT

At issue are four decisions made by Commerce on remand: (1) the valuation of glass; (2) the valuation of air freight; (3) the methodology for calculating Risen's rate for partial facts available, with an adverse inference; and (4) the rate applicable to separate rate respondents, including Shangluo BYD. In the *Remand Determination*, Commerce tried to provide additional explanation for its decisions to value solar glass using Romanian Harmonized Tariff Schedule ("HTS") subheading 7007.19.80, rather than Malaysian HTS 7007.19.90, value Jinko's air freight using Freightos data, instead of International Air Transport Association ("IATA") data, and the methodology used to apply partial facts available, with an adverse inference, to Risen. Additionally, because Commerce did not make any changes to the dumping margins of the mandatory respondents in the *Remand Determination*, Commerce did not reconsider the margin assigned to separate rate respondents, including Shangluo BYD.

As discussed below, Shangluo BYD disagrees with and objects to Commerce's *Remand Determination* with respect to the valuation of glass and air freight, the methodology for calculating Risen's rate for partial facts available with an adverse inference, and decision not to reconsider the separate rate assigned to non-investigated respondents, including Shangluo BYD. Shangluo BYD supports the comments submitted to the Court on these issues by plaintiffs and mandatory respondents Jinko and Risen. For purposes of brevity, Shangluo BYD will not repeat those comments. Shangluo BYD instead supports and hereby incorporates those comments by reference. Shangluo BYD also offers the following limited additional comments for the Court's consideration.

### A. THE COURT SHOULD REMAND COMMERCE'S VALUATION OF GLASS

In the opinion and order of the Court in this action, this Court found that Commerce: (1) failed to adequately explain its threshold decision that the Malaysian data for glass are unreliable; and (2) failed to adequately address record evidence that the Romanian surrogate value for glass is not specific to Jinko's glass because Jinko's glass uses glass with "advanced glass technology that improves light absorption and retention." Slip Op. 24-53 at 23-26. As a result, the Court determined that Commerce's solar glass valuation was not supported by substantial evidence and it remanded this decision to Commerce for reconsideration or further explanation. *Id.* at 26.

On remand, Commerce has again diverted from its selection of Malaysia as the primary surrogate country for this review by continuing to value solar glass using import prices under Romanian HTS subheading 7007.19.80 rather than Malaysian HTS 7007.19.90. *Remand Determination* at 3-12. Commerce has tried to offer additional explanation for its decisions. With respect to the rejection of Malaysia glass data as unreliable, Commerce asserts that it could not use the Malaysian data because it had no reliable conversion factor. The Malaysian data is reported in values per square meter, while the consumption quantities reported by Jinko and Risen are in kilograms. According to Commerce, to convert from square meters to kilograms requires data on the thickness of the glass reflected in the Malaysian import statistics. Commerce asserts that because the thickness of the glass imported into Malaysia is not known, it is not possible to reliably convert the Malaysian import data to a per kilogram basis and the Malaysian data therefore is unusable. Commerce took this position even though the respondents provided conversion ratios based on their own production experience, raising various objections concerning the potential "variation" in the data by thickness. *Id.* at 7.

Commerce further rejected Jinko's argument that its glass has an absorbent layer (i.e., is "advanced glass technology that improves light absorption and retention") and is therefore excluded from coverage under Romanian HTS 7007.19.80. Commerce interprets the phrase "absorbent layer" as meaning a layer that "would absorb light, not let it pass through to the solar cells, and the solar cell would not function," not glass that transmits light. *Id*. at 9-11. Commerce also claims that it has determined in other reviews and the EU has determined that solar glass is classified under HTS 7007.19.80. *Id*. at 12.

Shangluo BYD disagrees with and objects to Commerce's determination on remand. The record does not support Commerce's rejection of the conversion factors reported by Jinko and Risen. The record further does not support the conclusion that Romanian HTS 7007.19.80 covers the type of glass used by Jinko and Risen. In support therefore, Shangluo BYD incorporates by reference the comments submitted by Jinko and Risen with respect to these issues and submits there is no reasonable basis for Commerce to use Romanian HTS 7007.19.80 to value the respondents' glass.

### B. THE COURT SHOULD REMAND COMMERCE'S VALUATION OF AIR FREIGHT

Commerce has continued to rely on Freightos data, instead of International Air Transport Association ("IATA") data, to value air freight services used by Jinko. *Remand Determination* at 12-19. Commerce had previously rejected the IATA data as not "publicly available." The CIT remanded Commerce's determination to: (1) further explain its determination that "publicly available" reasonably means "on the public record"; and (2) explain how placing publicly available information on the confidential record fails to promote accuracy, fairness, and predictability, in accordance with Commerce's regulations. Slip Op. 24-53 at 33-37.

Commerce's *Remand Determination* purports to address these two questions, finding first that "publicly available" requires that the precise information at issue, and all of it, is placed on the record. *Remand Determination* at 13-14. Second, Commerce argues that confidential information cannot be used to value factors of production because doing so "shrinks the pool of parties that are able to file comments on the merits of the prospective SVs" and that this "undermines the accuracy of dumping calculations" and is unfair to parties without access to the confidential record and lacks transparency. *Id*. at 14-15. Commerce also argues that this undermines predictability because parties lacking access to the confidential record will not be able to see and understand the data relied upon by Commerce.

Commerce argues that "almost none of the underlying IATA data and information regarding the IATA data collection are publicly available. In contrast, Freightos data satisfy a number of Commerce's SV selection criteria including being publicly available, contemporaneous with the period under consideration, broad-market averages, tax- and duty-exclusive, and specific to the inputs being valued." *Id.* at 18. In addition, Commerce argues that using Freightos data over IATA data to value Jinko's air freight is consistent with the SV source used in a previous administrative review in this proceeding. *Id.* at 17.

Shangluo BYD disagrees with Commerce's analysis and conclusions. Commerce's interpretation of "publicly available" is unreasonable both generally and as applied in this case and it was therefore error for Commerce to reject the IATA data. Shangluo BYD supports and incorporates by reference the comments submitted by Jinko with respect to this issue and submits that there is no reasonable basis for Commerce to use the Freightos data.

### C. THE COURT SHOULD REMAND COMMERCE'S METHODOLOGY FOR CALCULATING RISEN'S RATE FOR FACTS AVAILABLE WITH AN ADVERSE INFERENCE

The CIT remanded Commerce's calculation of an adverse facts available rate for missing factors of production ("FOP") data from certain of Risen's unaffiliated suppliers. In particular, the CIT remanded for Commerce to adequately explain the mechanics and rationale for its calculation of an adjustment to Risen's consumption ratios for three groupings of inputs (solar cell input, solar module input, and packing input). Slip Op. 24-53 at 54-55. The CIT additionally instructed Commerce to explain how this methodology is "reasonable or promotes accuracy." *Id*. at 55.

In the *Remand Determination*, Commerce continued to use the same methodology for calculating partial facts available for unreported factors of production from Risen's unaffiliated suppliers. *Remand Determination* at 20-27. Commerce has tried to offer additional explanation for its finding, arguing that the agency has broad discretion in selecting facts available to which the Court owes deference. Commerce then explained the mechanics of its calculations. Commerce defended its methodology arguing that it "made choices in applying that inference that served the overall statutory purpose of accuracy and the purpose of section 776(b) of the Act, which is to induce cooperation" its methodology was in accordance with the Act. *Id.* at 27.

Shangluo BYD disagrees with Commerce's determination and respectfully submits that Commerce's calculation methodology is unlawful and is not supported by substantial evidence. Commerce has failed to meet its burden in demonstrating the methodology it has chosen is fair and accurate. Shangluo BYD supports and incorporates by reference the comments submitted by Risen with respect to this issue.

### D. THE SEPARATE RATE CALCULATION SHOULD BE REVISED CONSISTENT WITH REVISIONS MADE TO THE MANDATORY RESPONDENT RATES

Shangluo BYD disagrees with and objects to Commerce's determination in the *Remand Determination* not to reconsider the separate rate assigned to non-investigated respondents, including Shangluo BYD, because the margins determined for Jinko and Risen are not supported by substantial evidence and are not in accordance with law for the reasons summarized above. *Remand Determination* at 27. For the reasons articulated above and in the comments submitted by Jinko and Risen, the Court should remand this case to Commerce to reconsider these issues and to recalculate Jinko's and Risen's rates after making the necessary corrections. Because Shangluo BYD's dumping margin is determined by, and is derivative of, the dumping margins determined for Jinko and Risen, Commerce should be instructed to recalculate and redetermine Shangluo BYD's margin based on the corrected margins of the mandatory respondents.

## II. CONCLUSION

For the foregoing reasons, and those submitted in Jinko's and Risen's comments, Shangluo BYD respectfully requests that this Court remand Commerce's *Remand Determination*.

Respectfully submitted,

/s/ Craig A. Lewis
Craig A. Lewis

HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004
Phone: +1.202.637.5600
Fax: +1.202.637.5910
E-mail: craig.lewis@hoganlovells.com

*Counsel to BYD (Shangluo) Industrial Co., Ltd.*

Dated: October 30, 2024

## CERTIFICATE OF COMPLIANCE

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Craig A. Lewis, hereby certify that this brief complies with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures. Excluding the table of contents, table of authorities, and signature block, the word count for this brief is 1,856 words. This brief thus complies with the Standard Chambers Procedures, which permits responses to the agency's remand determination of 10,000 words or fewer.

Respectfully submitted,

*/s/* Craig A. Lewis

Craig A. Lewis

HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004
Phone: +1.202.637.5600
Fax: +1.202.637.5910
E-mail: craig.lewis@hoganlovells.com

*Counsel to BYD (Shangluo) Industrial Co., Ltd.*

Dated: October 30, 2024