UNITED STATES COURT OF INTERNATIONAL TRADE
NEW YORK, NEW YORK

BEFORE: THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| JINKO SOLAR IMPORT AND EXPORT CO., LTD., *et al.*, <br><br> Plaintiffs, <br><br> and <br><br> JA SOLAR TECHNOLOGY YANGZHOU CO., LTD., *et al.*, <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> AMERICAN ALLIANCE FOR SOLAR MANUFACTURING, <br><br> Consolidated Defendant-Intervenor. | Consol. Court No. 22-00219 |

**PLAINTIFF-INTERVENOR BYD (SHANGLUO) INDUSTRIAL CO., LTD.'S
COMMENTS ON SECOND REMAND REDETERMINATION**

HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004
Phone: +1.202.637.5600
Fax: +1.202.637.5910

*Counsel to BYD (Shangluo) Industrial Co., Ltd.*

January 5, 2026

**TABLE OF CONTENTS**

I.   ARGUMENT ................................................................................................................ 2

    A.   THE COURT SHOULD REMAND AGAIN COMMERCE'S VALUATION OF GLASS ........................................................................................................... 2

    B.   THE COURT SHOULD REMAND AGAIN COMMERCE'S METHODOLOGY FOR CALCULATING RISEN'S RATE FOR FACTS AVAILABLE WITH AN ADVERSE INFERENCE ...................................................................................... 4

    C.   THE SEPARATE RATE CALCULATION SHOULD BE REVISED CONSISTENT WITH REVISIONS MADE TO THE MANDATORY RESPONDENT RATES ...................................................................................... 6

II.  CONCLUSION ............................................................................................................ 7

**PLAINTIFF-INTERVENOR BYD (SHANGLUO) INDUSTRIAL CO., LTD.'S COMMENTS ON SECOND REMAND REDETERMINATION**

Plaintiff-Intervenor BYD (Shangluo) Industrial Co., Ltd. ("Shangluo BYD") hereby submits the following objections to the U.S. Department of Commerce's ("Commerce" or the "Department") Final Results of Redetermination Pursuant to Court Remand (Sep. 26, 2025), Consol. Court No. 22-00219, ECF No. 147 ("*Second Remand Determination*").

The *Second Remand Determination* was issued pursuant to the opinion and order of the Court in this action, *Jinko Solar Import and Export Co., Ltd., et al. v. United States*, Consol. Court No. 22-00219, Slip Op. 25-67 (Ct. Int'l Trade May 30, 2025), ECF No. 132 ("*Second Remand Order*"). The *Second Remand Determination* concerns the final results of the 2019-2020 administrative review of the antidumping order on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China. *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China*, 87 Fed. Reg. 38,379 (Dep't Commerce June 28, 2022) (final results of antidumping duty administrative review and final determination of no shipments; 2019-2020) (P.R. 464), and accompanying Issues and Decision Memorandum (June 21, 2022) (P.R. 455), as amended by *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China*, 87 Fed. Reg. 48,621 (Dep't Commerce Aug. 10, 2022) (amended final results of antidumping duty administrative review; 2019-2020) (P.R. 473) (collectively, *"Final Results"*). 1/ The mandatory respondents selected for individual examination in the review are Plaintiffs Jinko Solar Import and Export Co., Ltd. et al. and certain of its affiliates (collectively, "Jinko") and Consolidated Plaintiff Risen Energy Co., Ltd. ("Risen").

---

1/ "P.R. __" references documents in the initial public record of the administrative review at issue in this case.

1

I.   ARGUMENT

At issue are three decisions made by Commerce on remand regarding: (1) the valuation of glass; (2) the methodology for calculating Risen's rate for partial facts available, with an adverse inference; and (3) the rate applicable to separate rate respondents, including Shangluo BYD.  In the *Second Remand Determination,* Commerce tried to provide additional explanation for its decisions to value solar glass using Romanian Harmonized Tariff Schedule ("HTS") subheading 7007.19.80, rather than Malaysian HTS 7007.19.90, and the methodology used to apply partial facts available, with an adverse inference, to Risen.  Additionally, because Commerce did not make any changes to the dumping margins of the mandatory respondents in the *Second Remand Determination*, Commerce did not reconsider the margin assigned to separate rate respondents, including Shangluo BYD.

As discussed below, Shangluo BYD disagrees with and objects to Commerce's *Second Remand Determination* with respect to the valuation of glass, the methodology for calculating Risen's rate for partial facts available with an adverse inference, and decision not to reconsider the separate rate assigned to non-investigated respondents, including Shangluo BYD.  Shangluo BYD supports the comments submitted to the Court on these issues by plaintiffs and mandatory respondents Jinko and Risen.  For purposes of brevity, Shangluo BYD will not repeat those comments.   Shangluo BYD instead supports and hereby incorporates those comments by reference.  Shangluo BYD also offers the following limited additional comments for the Court's consideration.

    A.   THE COURT SHOULD REMAND AGAIN COMMERCE'S VALUATION OF GLASS

In the opinion and order of the Court in this action, this Court found that Commerce: (1) failed to address why it could not reasonably convert Jinko's and Risen's glass consumption

2

data directly from per piece to square meters; and (2) failed to confront evidence supporting the reliability of the Malaysian data, especially considering Commerce's preference to value all factors of production ("FOPs") from the same primary surrogate country (i.e., Malaysia). *Second Remand Order* at 11-15. As a result, the Court determined that Commerce's solar glass valuation was not supported by substantial evidence and it remanded this decision to Commerce to "provide an explanation grounded in the record." *Id.* at 15.

On remand, rather than adopting Malaysian HTS 7007.19.90 as Commerce did in the draft remand results, Commerce continued to value solar glass using import prices under Romanian HTS 7007.19.80. *Second Remand Determination* at 16-24. Commerce explained that the Malaysian data, which are reported on a per-square-meter basis, are unreliable because valuing glass in square meters "ignores the varying thicknesses of the glass and results in the same glass value in the normal value for both CONNUMs," even though "the thicker glass would cost more." *Id.* at 18-19. Commerce further claimed that because respondents used glass "with varying thicknesses in their solar modules," reliance on Malaysian data would yield "inaccurate and distortive" normal values and "distorted dumping margins." *Id*. Although Commerce acknowledged that the record permits conversion of respondents' glass consumption to square meters, it rejected those conversions as relying on "average ratios that are not specific to any CONNUM" and therefore "do not result in accurate CONNUM-specific glass consumption figures." *Id*. at 19-21. Accordingly, Commerce concluded that it cannot reliably use the Malaysian data and thus again selected Romanian HTS 7007.19.80 as the surrogate value for solar glass. *Id.* at 16-24.

Commerce's rationale—that conversion ratios are "distortive" due to "varying glass thicknesses"—does not justify rejecting the Malaysian data, particularly given the record evidence

3

providing glass dimensions and weights sufficient to perform the conversion, and where Commerce itself performed that conversion in its draft remand results. *See* Risen Sect. D Questionnaire Resp. at Exh. D-34 (Apr. 30, 2021) (P.R. 147); Jinko Sect. D, E, App'xs XIII, Add'l Sect. D, & Doubl. Remedies Resps. at Exh. AD-9 (May 4, 2021) (P.R. 148–52). Commerce's determination on remand to value glass using Romanian HTS 7007.19.80 continues to lack substantial evidence and fails to comply with the Court's instructions to "provide an explanation grounded in the record." Accordingly, Shangluo BYD disagrees with and objects to Commerce's determination on remand. In support, Shangluo BYD incorporates by reference the comments submitted by Jinko and Risen with respect to these issues and submits there is no reasonable basis for Commerce to use Romanian HTS 7007.19.80 to value the respondents' glass.

### B.  THE COURT SHOULD REMAND AGAIN COMMERCE'S METHODOLOGY FOR CALCULATING RISEN'S RATE FOR FACTS AVAILABLE WITH AN ADVERSE INFERENCE

The Court remanded Commerce's methodology for calculating Risen's adverse facts available ("AFA") rate for missing FOP data from certain unaffiliated suppliers. The Court held that Commerce's methodology was not adequately grounded in record evidence, lacked a reasoned and lawful explanation, and failed to justify the degree of adversity applied. *Second Remand Order* at 20-32. The Court determined that Commerce had not sufficiently explained either the "mechanics" or "rationale" for its AFA adjustment methodology—specifically, Commerce's calculation of adjusted consumption ratios for three groupings of inputs (solar cells, solar modules, and packing materials). *Id.* at 26-30. The Court therefore remanded the issue to Commerce to explain why the missing information would be indicative of higher rates and why the selected rate is reasonable. *Id.* at 32.

In the *Second Remand Determination*, Commerce revised its AFA methodology, but continued to apply group-based multipliers that are not tied to any supplier-specific or unreported

4

consumption by Risen's unaffiliated suppliers.  *Second Remand Determination* at 25-34. Commerce has tried to offer additional explanation for its decision, explaining that it "used the variation of consumption quantities contained within the reported consumption data to estimate the difference between Risen's reported consumption quantities and the unreported consumption quantities." *Id*. at 9.  Commerce attempted to further justify this approach by stating that "using a broader average AFA adjustment allowed Commerce to build in an increase to the adjustment, as contemplated in *De Cecco*." *Id*. at 29 (citing *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed Cir. 2000)).  However, this explanation does not demonstrate that the missing information is indicative of higher consumption rates, nor does it explain why the particular degree of adversity selected is reasonable or grounded in record evidence, as required by the Court.

Moreover, because Commerce's group-based AFA multipliers are not tied to any supplier-specific or unreported consumption and instead are derived from averages of reported data, they do not constitute "facts otherwise available" drawn from the record within the meaning of 19 U.S.C. § 1677e(b)(2), nor do they satisfy *De Cecco*'s requirement that an adverse inference be a reasonable estimate of the respondent's actual commercial practices rather than a punitive or abstract increase.  *De Cecco*, 216 F.3d at 1032.  Accordingly, Shangluo BYD disagrees with Commerce's determination and respectfully submits that Commerce's calculation methodology is unlawful and is not supported by substantial evidence.  Commerce has failed to comply with the Court's remand instructions and to meet its burden in demonstrating the methodology it has chosen is fair and accurate.  Shangluo BYD supports and incorporates by reference the comments submitted by Risen with respect to this issue.

### C.     THE SEPARATE RATE CALCULATION SHOULD BE REVISED CONSISTENT WITH REVISIONS MADE TO THE MANDATORY RESPONDENT RATES

Shangluo BYD disagrees with and objects to Commerce's determination in the *Second Remand Determination* not to reconsider the separate rate assigned to non-investigated respondents, including Shangluo BYD, because the margins determined for Jinko and Risen are not supported by substantial evidence and are not in accordance with law for the reasons summarized above. *Second Remand Determination* at 34. For the reasons articulated above and in the comments submitted by Jinko and Risen, the Court should remand this case to Commerce to reconsider these issues and to recalculate Jinko's and Risen's rates after making the necessary corrections. Because Shangluo BYD's dumping margin is determined by, and is derivative of, the dumping margins determined for Jinko and Risen, Commerce should be instructed to recalculate and redetermine Shangluo BYD's margin based on the corrected margins of the mandatory respondents.

## II. CONCLUSION

For the foregoing reasons, and those submitted in Jinko's and Risen's comments, Shangluo BYD respectfully requests that this Court remand Commerce's *Second Remand Determination*.

Respectfully submitted,

/s/ Craig A. Lewis
Craig A. Lewis

HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004
Phone: +1.202.637.5600
Fax: +1.202.637.5910
E-mail: craig.lewis@hoganlovells.com

*Counsel to BYD (Shangluo) Industrial Co., Ltd.*

Dated: January 5, 2026

## CERTIFICATE OF COMPLIANCE

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Craig A. Lewis, hereby certify that this brief complies with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures. Excluding the table of contents, table of authorities, and signature block, the word count for this brief is 1,632 words. This brief thus complies with the Standard Chambers Procedures, which permits responses to the agency's remand determination of 10,000 words or fewer.

Respectfully submitted,

*/s/* Craig A. Lewis
Craig A. Lewis

HOGAN LOVELLS US LLP
Columbia Square Building
555 Thirteenth Street, NW
Washington, DC 20004
Phone: +1.202.637.5600
Fax: +1.202.637.5910
E-mail: craig.lewis@hoganlovells.com

*Counsel to BYD (Shangluo) Industrial Co., Ltd.*

Dated: January 5, 2026