IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JINKO SOLAR IMPORT AND EXPORT CO. LTD., *et al.*,<br><br>        Plaintiffs,<br><br>TRINA SOLAR CO., LTD., *et al.*,<br><br>        Consolidated Plaintiffs,<br><br>and<br><br>JA SOLAR TECHNOLOGY YANGZHOU CO., LTD., *et al.*,<br><br>        Plaintiff-Intervenors,<br><br>v.<br><br>UNITED STATES,<br><br>        Defendant,<br><br>and<br><br>AMERICAN ALLIANCE FOR SOLAR MANUFACTURING,<br><br>        Defendant-Intervenor. | Before: Hon. Claire R. Kelly,<br>        Judge<br><br>Consol. Court No. 22-00219<br><br><u>NON-CONFIDENTIAL VERSION</u><br><br>Business Proprietary Information Removed from Page 2 |

### DEFENDANT-INTERVENOR AMERICAN ALLIANCE FOR SOLAR MANUFACTURING'S COMMENTS IN SUPPORT OF THE REMAND RESULTS

        Timothy C. Brightbill, Esq.
        Laura El-Sabaawi, Esq.
        Paul A. Devamithran, Esq.

        WILEY REIN LLP
        2050 M Street, NW
        Washington, DC 20036
        (202) 719-7000

        *Counsel to the American Alliance for Solar Manufacturing*

**Dated: January 5, 2026**

**Consol. Ct. No. 22-00219**                                              NON-CONFIDENTIAL VERSION

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION ................................................................................................ 1 |
| II. | ARGUMENT ........................................................................................................ 1 |
|  | A. Commerce's Selection of the Solar Glass Surrogate Value Was Supported by Substantial Evidence and Otherwise Lawful ........................1 |
|  |   1. Commerce Reasonably Found the Romanian HTS Data to Be Superior as to Product Specificity and Reasonably Departed from the Primary Surrogate Country for Solar Glass Surrogate Values.................................................................2 |
|  |   2. Commerce Reasonably Found that Respondents' Solar Glass Is Not Excluded from Romanian HTS 7007.19.80 ............................4 |
|  | B. Commerce Applied a Lawful Methodology When Using AFA to Fill the Gaps in the Record Resulting from Risen's Failure to Report Certain Factors of Production...................................................................6 |
| III. | CONCLUSION ..................................................................................................... 8 |

| Consol. Ct. No. 22-00219 | NON-CONFIDENTIAL VERSION |
|---|---|

# TABLE OF AUTHORITIES

**Cases** ............................................................................................................................. **Page(s)**

*Coal. v. United States*,
    986 F.3d 1351 (Fed. Cir. 2021) ............................................................................................7

*Coal. v. United States*,
    No. 17-00167, slip op. 18-146 (Ct. Int'l Trade Oct. 23, 2018) ..............................................5

*Jinko Solar Import and Export Co., Ltd. et. al. v. United States*,
    No. 22-00219, slip op. 24-53 (Ct. Int'l Trade May 1, 2024) .................................................4

*Jinko Solar Import and Export Co., Ltd. et. al. v. United States*,
    No. 22-00219, slip op. 25-67 (Ct. Int'l Trade May 30, 2025) ......................................1, 2, 6

*JTEKT Corp. v. United States*,
    675 F. Supp. 2d 1206 (Ct. Int'l Trade 2009) ........................................................................7

*Maverick Tube Corp. v. United States*,
    857 F.3d 1353 (Fed. Cir. 2017) ............................................................................................7

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ................................................................................................................7

*NMB Singapore Ltd. v. United States*,
    557 F.3d 1316 (Fed. Cir. 2009) ............................................................................................7

**Statutes**

19 U.S.C. § 1677e(b) .....................................................................................................................6

19 U.S.C. § 1677e(b)(2) .................................................................................................................6

**Administrative Materials**

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules,*
    *From the People's Republic of China*, 85 Fed. Reg 62,275 (Dep't Commerce
    Oct. 2, 2020) ........................................................................................................................5

**Other Authorities**

Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc.
    No. 103-316, vol. I (1994), *reprinted in* 1994 .....................................................................7

**Consol. Ct. No. 22-00219**                                                            **NON-CONFIDENTIAL VERSION**

I.    **INTRODUCTION**

On behalf of Defendant-Intervenor the American Alliance for Solar Manufacturing, we hereby submit the following comments in support of the September 26, 2025 second remand redetermination issued by the U.S. Department of Commerce ("Commerce"). Letter from Jack Dunkelman, Att'y, Off. of the Chief Counsel for Trade Enf't & Compliance, to Mario Toscano, Clerk of the Court, U.S. Court of Int'l Trade, re: *Redetermination Pursuant to Court Remand Order in Jinko Solar Import and Export Co., Ltd., et. al. v. United States, Consol. Court No. 22-00219* (Sep. 26, 2025), ECF No. 148 ("Second Remand Redetermination"). Commerce continues to properly value solar glass using import prices under Romanian Harmonized Tariff Schedule ("HTS") category 7007.19.80 and to properly base Risen Energy Co., Ltd.'s ("Risen") dumping margin, in part, on facts available with adverse inferences ("AFA"). Commerce provided additional explanation for each of these determinations, and Commerce's remand results are consistent with the Court's May 30, 2025 opinion. *Jinko Solar Import and Export Co., Ltd. et. al. v. United States*, No. 22-00219, slip op. 25-67 (Ct. Int'l Trade May 30, 2025), ECF No. 132 ("*Jinko II*"). The Court should therefore sustain Commerce's Second Remand Redetermination, as it is supported by substantial evidence and otherwise in accordance with law.

II.    **ARGUMENT**

    A.    **Commerce's Selection of the Solar Glass Surrogate Value Was Supported by Substantial Evidence and Otherwise Lawful**

In the Second Remand Redetermination, Commerce correctly continues to use Romanian Harmonized System ("HS") number 7007.19.80 instead of Malaysian HS 7007.19.90 to value solar glass, despite Malaysia being the primary surrogate country. When remanding Commerce's first remand redetermination, the Court held (i) that Commerce did not explain why Jinko's and Risen's raw glass consumption data could not be converted directly from per piece to square meters using

1

record evidence and (ii) that Commerce did not adequately explain why Jinko's and Risen's solar glass is not excluded from the Romanian HTS category. *See Jinko II* at 8. Commerce further addressed both of these issues in the second remand determination, and the Court should sustain the agency's reasonable and otherwise lawful determination to continue valuing solar glass under the Romanian HTS category.

    1.    **Commerce Reasonably Found the Romanian HTS Data to Be Superior as to Product Specificity and Reasonably Departed from the Primary Surrogate Country for Solar Glass Surrogate Values**

Commerce reasonably continues to rely on Romanian HTS data to value respondents' solar glass instead of Malaysian HTS data, because Malaysian HTS data requires a distortive conversion and Romanian HTS data does not. As argued in Petitioner's comments on draft remand results and explained by Commerce in its second remand redetermination, converting respondents' raw data for glass consumption from per piece to square meters – to match the Malaysian data which is reported in square meters – is inherently problematic and highly distortive on a CONNUM-specific basis, as it fails to capture the physical variances of a three-dimensional piece of glass. *See* Second Remand Redetermination at 17-21. The thickness, and thus the weight, of a square meter of solar glass varies. *Id.* at 18. Indeed, the record demonstrates that [

]. *See* Letter from Grunfeld, Desiderio, Lebowitz, Silverman, & Klestadt, LLP to Sec'y Commerce, re: *Jinko Solar's Redacted Case Brief in the 8th Administrative Review of the Antidumping Duty Order on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from the People's Republic of China (A-570-979)* (May 27, 2022), C.R. 494-496, P.R. 446-448 at Attachment 4; Letter from DeKieffer & Horgan, PLLC to Sec'y Commerce, re: *Crystalline Silicon Photovoltaic Cells from the People's Republic of*

*China: Case Brief* (Jan. 28, 2022) at C.R. 481-482, P.R. 421 at Attachment 1. Thus, there can be no single universal conversion to accurately represent the value of a square meter of solar glass. In other words, two pieces of solar glass could have the same square meter measurements but vastly different thickness. Relying on a cost per square meter would result in both pieces of glass being valued the same, notwithstanding the fact that the two pieces would have different actual values since they have different thicknesses. This would distort Commerce's calculation of normal value on a CONNUM-specific basis.

Furthermore, as Commerce explained in its second remand redetermination, record evidence does not demonstrate that Malaysian glass imports during the period of review had the same thickness or same quantities of glass for each thickness as the respondents' glass imports. It would therefore be unreasonable and unsupported by the record to conclude that the overall average value of glass per square per square meter derived from Malaysian import data is representative of the average value of glass used by the respondents. *See* Second Remand Redetermination at 19.

As a result, whether or not the respondents are able to report their glass factors of production ("FOP") on a square meter basis does not eliminate the distortive effect of using the Malaysian surrogate value, as there is a distortion inherent in the fact that the surrogate value is reported on a square meter basis. While Commerce may not be able to eliminate all distortions in all surrogate values, there is a significantly less distortive data source available on this record: the Romanian surrogate values. Because the Romanian surrogate value data are reported as a cost per kilogram, the concerns that arise from valuing a three-dimensional product based on a two-dimensional cost are largely eliminated. Put another way, a cost per kilogram better captures

3

Consol. Ct. No. 22-00219												NON-CONFIDENTIAL VERSION

differences in the values of glass with different characteristics and thus is less distortive than a cost per square meter.

Thus, Commerce's determination that the Romanian HTS data is superior to the Malaysia HTS data for the purposes of valuing respondents' solar glass is supported by substantial evidence. Having so determined, Commerce was justified in its decision to depart from its primary surrogate country and value the solar glass input using Romanian data, and the Court should sustain Commerce's decision.

### 2. Commerce Reasonably Found that Respondents' Solar Glass Is Not Excluded from Romanian HTS 7007.19.80

In *Jinko I*, the Court found that Commerce did not adequately address concerns regarding the specificity of the Romanian HTS category. J*inko Solar Import and Export Co., Ltd. et. al. v. United States*, No. 22-00219, slip op. 24-53 (Ct. Int'l Trade May 1, 2024), ECF No. 76 ("*Jinko I*"). The Court took issue with Commerce's discussion of the exclusions to the Romanian HTS category of glass that limits light transmission (unlike solar glass, which is designed to absorb light). The Court noted that the exclusion of "glass of a size and shape suitable for incorporation into motor vehicles, aircraft, spacecraft, vessels and other vehicles" does not have a light-limiting characteristic and that Commerce's discussion of the exclusions was therefore deficient because it did not address this "size and shape" exclusion. Second Remand Redetermination at 22. But as Commerce explained in its second remand redetermination, the agency discussed the limit-limiting properties of the set of glass exclusions that respondents argued encompassed solar glass, *e.g.*, glass that is enameled, colored throughout the mass, opacified, flashed or that has a reflecting layer. Commerce explained in its first remand redetermination that all of these exclusions share a defining, light-limiting characteristic that solar glass does not. Letter from W. Mitch Purdy, Att'y, Off. of the Chief Counsel for Trade Enf't & Compliance, to Mario Toscano, Clerk of the Court,

4

Consol. Ct. No. 22-00219                                              NON-CONFIDENTIAL VERSION

U.S. Court of Int'l Trade, re: *Redetermination Pursuant to Court Remand Order in Jinko Solar Import and Export Co., Ltd., et. al. v. United States*, Consol. Court No. 22-00219 (Aug. 29, 2024), ECF No. 89 ("First Remand Redetermination"). As Commerce further explained in its second remand redetermination, respondents have not argued (and cannot argue) that solar glass falls within the "size and shape" exclusion, which relates to sizes and shapes of glass used in vehicles. In fact, this same "size and shape" exclusion is present in the Malaysian HTS. *See* Second Remand Redetermination at 23-24. Commerce was not ignoring detracting information by focusing on the light-limiting exclusions on first remand; the agency was directly addressing respondents' invocation of that specific set of exclusions. In any event, Commerce has now thoroughly explained in its second remand redetermination how none of the exclusions to Romanian HTS 7007.19.80 apply to solar glass, light-limiting or otherwise.

Not only has Commerce adequately addressed concerns regarding the specificity of Romanian import data, the agency has also demonstrated why the Romanian import data have a higher degree of specificity than the Malaysian import data. As Commerce has explained in the past: "Bulgaria and Romania HTS 7007.19.80 covers tempered glass used in solar panels; the specific type of glass used by solar panel producers. In contrast, Malaysia HTS 7007.19.9000 is broader, covering all types of tempered glass other than automotive glass." *See* Issues and Decision Memorandum accompanying *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 85 Fed. Reg 62,275 (Dep't Commerce Oct. 2, 2020) (final results of antidumping duty admin. rev. and final deter. of no shipments; 2017-2018) at cmt. 3; *see also* First Remand Redetermination at 35. While the Department has a preference for using surrogate values from the primary surrogate country, the Court has made clear that this preference cannot be used to overcome or ignore questions regarding the suitability of the

5

Case 1:22-cv-00219-CRK   Document 167   Filed 01/06/26   Page 9 of 12

Consol. Ct. No. 22-00219                                         NON-CONFIDENTIAL VERSION

primary surrogate country's data. *See, e.g.*, *Diamond Sawblades Mfrs.' Coal. v. United States*, No. 17-00167, slip op. 18-146 (Ct. Int'l Trade Oct. 23, 2018) at 25 ("The regulatory preference for valuing inputs for a {non-market economy} respondent's production using data from a single 'primary' surrogate country has been held insufficient to explain decisions to reject data from a non-primary surrogate country if questions remain unanswered as to the suitability of the primary surrogate country data"). Here, the Malaysian and Romanian data are not comparable—the Romanian data are clearly preferable because, in addition to the conversion issue discussed above, they are specific to the solar glass used by respondents. Accordingly, the Court should sustain Commerce's use of the import data under Romanian HS 7007.19.80 as the surrogate value for solar glass.

### B. Commerce Applied a Lawful Methodology When Using AFA to Fill the Gaps in the Record Resulting from Risen's Failure to Report Certain Factors of Production

Commerce's methodology for applying partial AFA to Risen based on its failure to provide FOP data for its unaffiliated solar cell and module suppliers is reasonable and lawful.

In its remand order, the Court instructed Commerce to explain why (i) Risen's missing FOP information is indicative of rates higher than those calculated using the highest consumption quantity that was reported for a particular input for any CONNUM on the record and (ii) the rate it chose is reasonable. *See Jinko II*, slip op. 25-67 at 32. Commerce has provided fulsome explanations addressing these issues on remand.

Commerce is granted a significant amount of discretion in choosing among information to use to apply AFA. 19 U.S.C. § 1677e(b); *see also* Sec. 502 of the Trade Preferences Extension Act of 2015, P.L. 114-27, 129 Stat. 362, 383-84 (June 29, 2015). The statute states that "{a}n adverse inference under paragraph (1)(A) may include reliance on information derived from . . . any other

Case 1:22-cv-00219-CRK    Document 167    Filed 01/06/26    Page 10 of 12

Consol. Ct. No. 22-00219 NON-CONFIDENTIAL VERSION

information placed on the record." 19 U.S.C. § 1677e(b)(2). In using AFA, Commerce is directed to "ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. I, at 870 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4199. Put another way, "{t}he purpose of the adverse facts statute is to provide respondents with an incentive to cooperate with {the Department's} investigation." *Maverick Tube Corp. v. United States*, 857 F.3d 1353, 1360 (Fed. Cir. 2017). As such, as the U.S. Court of Appeals for the Federal Circuit has recognized, the Department may rely on facts "with some built-in increase intended as a deterrent to non-compliance." *Diamond Sawblades Mfrs.' Coal. v. United States*, 986 F.3d 1351, 1367 (Fed. Cir. 2021). Without an actual adverse impact, there is no incentive for respondents to cooperate, and the purpose of the statute cannot be effectuated.

Here, Commerce used an alternative calculation methodology designed to have a "sufficiently adverse" impact in order to incentivize cooperation in future proceedings. As Commerce explained, it is fully within its discretion to rely on the record evidence in applying an adverse inference, which it has done here. Further, Commerce is not required to use the same methodology for applying AFA as it has in past reviews, so long as it supports that change with a reasoned explanation. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42, 103 (1983); *JTEKT Corp. v. United States*, 675 F. Supp. 2d 1206, 1237 (Ct. Int'l Trade 2009) ("{The Department} ordinarily may change a methodology provided it states its rationale for doing so and provided the stated rationale is reasonable.") (quoting *NMB Singapore Ltd. v. United States*, 557 F.3d 1316, 1328 (Fed. Cir. 2009)). Commerce has provided such a reasoned explanation here. As Commerce explains, while it used Risen's highest consumption quantities as AFA in the two administrative reviews preceding this review, that approach did not

**Consol. Ct. No. 22-00219**  NON-CONFIDENTIAL VERSION

induce cooperation from Risen. Second Remand Redetermination at 31-32. Thus, using a new methodology that adds a "built-in increase" is necessary to deter non-cooperation. *Id.* at 14.

Accordingly, the Court should sustain Commerce's use of its stated methodology for setting the consumption quantities of Risen's unaffiliated suppliers FOP.

### III. <u>CONCLUSION</u>

For the reasons detailed above, the Alliance respectfully submits that this Court should affirm in full the second remand results of Commerce's eighth administrative review of the Solar I antidumping duty order.

Respectfully submitted,

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.
Paul A. Devamithran, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the American Alliance for Solar Manufacturing*

Dated: January 5, 2026

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Comments in Support of the Remand Result, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2021), is 2,304 words.

*/s/ Timothy C. Brightbill*
(Signature of Attorney)

Timothy C. Brightbill
(Name of Attorney)

American Alliance for Solar Manufacturing
(Representative Of)

January 5, 2026
(Date)