**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE CLAIRE R. KELLY**

_____x
: 
JINKO SOLAR IMPORT AND EXPORT CO.,           :
LTD.; JINKO SOLAR CO., LTD.; JINKOSOLAR       :
TECHNOLOGY (HAINING) CO., LTD.;               :
YUHUAN JINKO SOLAR CO., LTD.;                 :       Consol. Court No. 22-00219
ZHEJIANG JINKO SOLAR CO., LTD.;               :
JIANGSU JINKO TIANSHENG SOLAR CO.,            :       **PUBLIC VERSION**
LTD.; JINKOSOLAR (CHUZHOU) CO., LTD.;         :
JINKOSOLAR (YIWU) CO., LTD.; and              :
JINKOSOLAR (SHANGRAO) CO., LTD.,              :
                                              :
            Plaintiffs,                       :
                                              :
            v.                                :
                                              :
UNITED STATES,                                :
            Defendant,                         :
                                              :
            and                               :
                                              :
AMERICAN ALLIANCE FOR SOLAR                   :
 MANUFACTURING,                               :
                                              :
            Defendant-Intervenor.             :
_____x

**PLAINTIFFS' REPLY COMMENTS ON COMMERCE'S
SECOND REMAND REDETERMINATION**

Ned H. Marshak
Dharmendra N. Choudhary*
Jordan C. Kahn*

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

599 Lexington Ave., 36th Floor
New York, New York 10022
(212) 557-4000
**
*1201 New York Ave., NW, Suite 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiffs Jinko Solar Import and Export Co., Ltd., Jinko Solar Co., Ltd., Jinkosolar Technology (Haining) Co., Ltd., Yuhuan Jinko Solar Co., Ltd., Zhejiang Jinko Solar Co., Ltd., Jiangsu Jinko Tiansheng Solar Co., Ltd., Jinkosolar (Chuzhou) Co., Ltd., Jinkosolar (Yiwu) Co., Ltd., and Jinkosolar (Shangrao) Co., Ltd*

Dated: February 25, 2026

## TABLE OF CONTENTS

I.    TO VALUE SOLAR GLASS, MALAYSIAN HTS 7007.19.90 SV PER SQM DATA IS
      NOT DISTORTIVE ON A CONNUM-SPECIFIC BASIS ................................................... 1

II.   JINKO'S AR-COATED GLASS IS EXCLUDED FROM ROMANIAN HTS 7007.19.80 .. 4

CONCLUSION ............................................................................................................. 7

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Diamond Sawblades Mfrs.' Coal. v. United States*,
    2018 WL 5281941 (CIT Oct. 23, 2018) ..................................................................7

*Jacobi Carbons AB v. United States*,
    313 F. Supp. 3d 1344 (CIT 2018) .........................................................................6

*Jinko Solar Import and Export Co. v. United States*,
    789 F. Supp. 3d 1275 (CIT 2025) ......................................................................1, 4

*Lucent Techs. v. Gateway*,
    580 F.3d 1301 (Fed. Cir. 2009) ...........................................................................1

**Other Authorities**

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules,*
    *from the People's Republic of China: Final Results of Antidumping Duty*
    *Administrative Review and Final Determination of No Shipments; 2017-2018,*
    85 Fed. Reg 62,275 (Oct. 2, 2020) ........................................................................6

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules,*
    *from the People's Republic of China: Final Results of Antidumping Duty*
    *Administrative Review and Final Determination of No Shipments; 2019-2020,*
    87 Fed. Reg. 38,379 (June 28, 2022) .....................................................................5

Plaintiffs Jinko Solar Import and Export Co., Ltd., Jinko Solar Co., Ltd., Jinkosolar Technology (Haining) Co., Ltd., Yuhuan Jinko Solar Co., Ltd., Zhejiang Jinko Solar Co., Ltd., Jiangsu Jinko Tiansheng Solar Co., Ltd., Jinkosolar (Chuzhou) Co., Ltd., Jinkosolar (Yiwu) Co., Ltd., and Jinkosolar (Shangrao) Co., Ltd. (collectively, "Jinko") submit reply comments to Defendant-Intervenor American Alliance for Solar Manufacturing's Comments in Support of the Remand Results (Jan. 5, 2026), ECF 166-67 ("Pet. Cmts."), responding to the Final Results of Redetermination Pursuant to Court Remand (Sept. 29, 2025), ECF 148-49, 2R C.R. 14, 2R P.R. 16 ("Second Remand"), filed by the U.S. Department of Commerce ("Commerce"), in response to this Court's ruling, *Jinko Solar Import and Export Co. v. United States*, 789 F. Supp. 3d 1275 (CIT 2025) ("*Jinko II*"), in the eighth administrative review ("AR8") of the antidumping duty ("ADD") order on crystalline silicon photovoltaic cells, whether or not assembled into modules ("solar cells"), from the People's Republic of China ("China").

## I.    TO VALUE SOLAR GLASS, MALAYSIAN HTS 7007.19.90 SV PER SQM DATA IS NOT DISTORTIVE ON A CONNUM-SPECIFIC BASIS

Defendant-Intervenor argues that Commerce "reasonably departed from the primary surrogate country for solar glass surrogate values" ("SV"). Pet. Cmts. at 2. It claims that "converting respondents' raw data for glass consumption from per piece to square meters . . . is . . . highly distortive on a CONNUM-specific basis, as it fails to capture the physical variances of a three-dimensional piece of glass." *Id*. In addition, it claims that "Malaysian HTS data requires a distortive conversion." *Id*. These arguments should be rejected. Neither of Defendant-Intervenor's speculative claims provides a basis for this Court to affirm Commerce's Second Remand. "It is well established that speculation does not constitute 'substantial evidence.'" *Lucent Techs. v. Gateway*, 580 F.3d 1301, 1327 (Fed. Cir. 2009).

In its Draft Second Remand, Commerce relied on a reasonable three-step methodology to calculate the SV of glass based on Malaysia data by: (1) calculating the conversion factors for glass (sqm/kg) based on respondents' total consumption of glass; (2) multiplying the conversion factor to each CONNUM (kg/watt) to derive a square meter per watt (sqm/watt) CONNUM; and (3) multiplying the Malaysian HTS 7007.1990 SV (Ringgit/sqm) to the square meter per watt CONNUMs. Draft Remand Redetermination Analysis Memorandum for Jinko (Aug. 21, 2025), 2R C.R. 1, 2R P.R. 1 ("Draft Second Remand"), at 2-4. This methodology resulted in a non-distortive CONNUM-specific glass SV. Plaintiffs' Comments on Commerce's Second Remand Redetermination (Jan. 5, 2026), ECF 160-61 ("Jinko Cmts."), at 19.

As Jinko established in its Comments to this Court, the above methodology results in different calculated sqm surface areas for each CONNUM because two CONNUMs reporting glass with the same sqm surface area but with different thicknesses will have different kg weights. Consequently, upon applying the Malaysian per sqm SV, the resulting values of glass would be CONNUM specific. Jinko Cmts. at 19-20. This fact directly rebuts Defendant-Intervenor's argument that "relying on a cost per square meter would result in both pieces of glass being valued the same, notwithstanding the fact that the two pieces would have different actual values since they have different thicknesses." Pet. Cmts. at 3.

Second, Defendant-Intervenor's claim "that [



]" Pet. Cmts. at 2. This claim is speculative and irrelevant because Commerce's ADD margin computation is based on a CONNUM specific analysis, the unit conversion is calculated for the average dimension of glass reported for the CONNUM, obviating any need for a unit conversion of individual glass pieces having different thickness

levels. As such, divergences in thickness levels of glasses is immaterial in the context of Commerce's broader CONNUM-based margin analysis. Jinko Cmts. at 21.

Moreover, such divergences in glass' thickness levels are irrelevant for Jinko since its glass factors of production ("FOP") for two CONNUMs are nearly equal, with a mere [    ] variation. *Id*. at 22, n.10. This fact, in turn, constitutes substantial evidence that the overall physical characteristics (surface areas and thicknesses) and therefore, sqm per kg conversion factor, of the underlying glass pieces are nearly uniform across Jinko CONNUMs.

Third, Defendant-Intervenor impermissibly speculates that "record evidence does not demonstrate that Malaysian glass imports during the period of review had the same thickness or same quantities of glass for each thickness as the respondents' glass imports." Pet. Cmts. at 3. This argument is based on conjecture and rebutted by substantial record evidence. As Jinko demonstrated, all three glass' conversion factors available on the record – *i.e.*, Jinko's 7.19 kg per sqm, Risen's [    ] kg per sqm and Romanian HTS 7007.19.80 import data's 7.88 kg per sqm – corroborate each other. Jinko Cmts. at 22-23. This fact, in turn, constitutes substantial evidence that Malaysian HTS 7007.19.90 imported glass, being a part of the same pool of internationally traded glass, shares similar average physical characteristics, including average thickness, of Jinko's glass. *Id*. at 23. Accordingly, Commerce's Draft Second Remand's direct application of Malaysian per sqm SV to Jinko's calculated sqm FOP of glass was not distortive.

For these reasons, Defendant-Intervenor's claim that "there is a significantly less distortive data source available on this record: the Romanian surrogate values" is not supported by record evidence. Pet Cmts. At 3. To the contrary, as discussed below, the Romanian HTS 7007.1980 SV is distortive as it is not product-specific, unlike the undisputedly product-specific Malaysian SV.

## II.    JINKO'S AR-COATED GLASS IS EXCLUDED FROM ROMANIAN HTS 7007.19.80

Defendant-Intervenor argues that "Commerce reasonably found that Respondents' solar glass is not excluded from Romanian HTS 7007.19.80." Pet. Cmts. at 4. As Jinko demonstrated in its Comments on Second Remand, this claim is unsupported by substantial record evidence. Jinko Cmts. at 9. Commerce's main rationale is that Jinko's anti-reflective ("AR") coated glass is not covered by the excluded exemplar "absorbent layered glass" in the Romanian HTS 7007.1980, based on the alleged "light limiting property" of such absorbent glass. Second Remand at 23-24. In its Comments on Second Remand, Jinko has repudiated the myriad logical and factual flaws underlying the assumed light limiting theory. Jinko Cmts. at 9-14.

Commerce's second rationale for its position that absorbent layered glass has light limiting property is that "Other exclusions" under HTS 7007.1980 – *i.e.*, glass that is enameled, colored throughout the mass, opacified, flashed or that has a reflecting layer – possess similar light limiting property. In its Comments on Second Remand, Jinko has already demonstrated that this conclusion is unsupported by substantial evidence. Jinko Cmts. 14-16. Further, in *Jinko II*, this Court remanded Commerce's *noscitur a sociis* inspired interpretation that glass with an absorbent layer has light limiting property, reasoning that "Commerce ignores the remaining exemplars in HTS 7007.19.80, *i.e.*, glass suitable for incorporation in motor vehicles, aircraft, spacecraft, vessels and other vehicles." *Jinko II*, 789 F. Supp. 3d at 1282.

In its Second Remand, Commerce deviated from its prior rationale that all excluded exemplars shared light limiting property. Commerce when deviating reframed its position that it "was not claiming that glass covered by the exclusion for 'glass of a size and shape suitable for incorporation in motor vehicles, aircraft, spacecraft, vessels and other vehicles' has light limiting characteristics." Second Remand at 23. In doing so, Commerce conceded that a subset of

exclusions – "size and shape" exclusion – are not based on light limiting property of glass. *Id.* This concession, in turn, undermines Commerce's *noscitur a sociis* based interpretation of absorbent layered glass. Defendant-Intervenor, in response to this Court's findings that "Commerce's discussion of the exclusions was therefore deficient because it did not address this 'size and shape' exclusion," argues that "the agency discussed the limit-limiting properties of the set of glass exclusions that respondents argued encompassed solar glass." Pet. Cmts. at 4.

Defendant-Intervenor's contention is contrary to record evidence because this rationale was advanced not by Commerce in AR8 – not by Jinko. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020*, 87 Fed. Reg. 38,379 (June 28, 2022), P.R. 464, Issues and Decision Memorandum ("IDM"), P.R. 455, Comment 3. Specifically, in response to Jinko's demonstration that its AR coated glass was covered under the excluded exemplar, "absorbent layered glass," Commerce invented the "light limiting" theory claiming that a subset of excluded exemplars, *i.e.*., six types of specialty glasses, shared such light limiting property. As such, it was Commerce, not Jinko, who crafted the purported "light limiting" properties of the six excluded specialty glass exemplars.

Further, Defendant-Intervenor claims that "respondents have not argued (and cannot argue) that solar glass falls within the 'size and shape' exclusion, which relates to sizes and shapes of glass used in vehicles." Pet. Cmts. at 5. Defendant-Intervenor is correct. Jinko never argued or intended to argue that its AR-coated glass is excluded from Romanian HTS 7007.1980 because it falls under the vehicular "size and shape" exclusion. Instead, Jinko's position is that its AR-coated glass falls under the "absorbent layered glass" of the "specialty glass exclusion" category under Romanian HTS 7007.1980. Consequently, Commerce sought to distinguish AR-

coated glass (which transmits light instead of absorbing light) from absorbent layered glass, reasoning that the latter shared light limiting property with all other excluded exemplars under HTS 7007.1980. In its Comments on Second Remand, Jinko has already established that this aspect of Commerce's Second Remand is not supported by substantial evidence. Jinko Cmts. at 9-18. Further, Commerce's concession that a subset of excluded exemplars – "size and shape" exclusions – is not based on light limiting property renders the agency's interpretation that "absorbent layered glass" has light limiting characteristics unsupported by substantial record evidence. Defendant-Intervenor fails to rescue this invalid Commerce finding. Therefore, Defendant-Intervenor's assertion that "Commerce has now thoroughly explained in its second remand redetermination how none of the exclusions to Romanian HTS 7007.19.80 apply to solar glass, light-limiting or otherwise," Pet. Cmts. at 5, is without merit and contradicted by substantial evidence.

Defendant-Intervenor also relies on inapposite precedent. The record in this AR8 proceeding subject to this Civil Action is significantly different that the sparse record in the sixth, 2017-18 administrative review ("AR6") of the ADD order on solar cells from China where Commerce determined that unlike Malaysia, "Romania HTS 7007.19.80 covers tempered glass used in solar panels." Pet. Cmts. at 5; *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2017-2018*, 85 Fed. Reg 62,275 (Oct. 2, 2020), IDM Comment 3. And in AR8, Jinko raised issues that were not raised in the AR6. Thus, this earlier AR6 decision is neither persuasive nor controlling. *See Jacobi Carbons AB v. United States,* 313 F. Supp. 3d 1344, 1363-65 (CIT 2018) ("prior reliance on subcategories of HS code 2706 lacks persuasive force when, as the Government recognizes,

'each administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record. . . . Although the Thai HS code 2706 ostensibly includes subheadings covering tar distilled from coal, *the record of this review* demonstrates the absence of imports pursuant to those subheadings.'") (emphasis in original)

Nor is the Second Remand supported by *Diamond Sawblades Mfrs.' Coal. v. United States*, 2018 WL 5281941 (CIT Oct. 23, 2018) ("*DSMC*"). Pet. Cmts. at 6. In *DSMC*, this Court indicated that SV data reported from a secondary surrogate country was preferred over an outlier SV from the primary surrogate country. *DSMC*, 2018 WL 5281941, *10-12. However, *Diamond Sawblades* is distinguishable because it involved the proper valuation of input, *id.*, while in this case the contentious issue for AR-coated glass' is its proper HTS classification.

In sum, Defendant-Intervenor fails to show that Commerce's twin rationale – (1) Romanian HTS 7007.1980 is product-specific; and (2) Malaysian HTS 7007.1990 per sqm reporting is distortive – are supported by substantial evidence.

## **CONCLUSION**

For the foregoing reasons, Jinko respectfully requests that this Court reject Defendant-Intervenor's arguments and again remand the valuation of Jinko's AR-coated glass with instructions to value the glass based on Malaysian HTS 7007.1990, because Commerce's Second Remand remains unsupported by substantial evidence and is otherwise not in accordance with law.

Respectfully submitted,

*/s/ Dharmendra N. Choudhary*
Ned H. Marshak
Dharmendra N. Choudhary*
Jordan C. Kahn*

7

PUBLIC VERSION

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
599 Lexington Ave., 36th Floor
New York, New York 10022
(212) 557-4000
**
*1201 New York Ave., NW, Suite 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiffs Jinko Solar Import
and Export Co., Ltd., Jinko Solar Co., Ltd.,
Jinkosolar Technology (Haining) Co., Ltd.,
Yuhuan Jinko Solar Co., Ltd., Zhejiang
Jinko Solar Co., Ltd., Jiangsu Jinko
Tiansheng Solar Co., Ltd., Jinkosolar
(Chuzhou) Co., Ltd., Jinkosolar (Yiwu) Co.,
Ltd., and Jinkosolar (Shangrao) Co., Ltd*

Dated: February 25, 2026

8

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiffs' Memorandum of Law In Support of Rule 56.2 Motion, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word, is 2,039 words—less than the 2,758 word limit (on account of the 7,242 words on Jinko's Comments on Second Remand).

*/s/ Dharmendra N. Choudhary*

*Counsel for Plaintiffs Jinko Solar Import and Export Co., Ltd., Jinko Solar Co., Ltd., Jinkosolar Technology (Haining) Co., Ltd., Yuhuan Jinko Solar Co., Ltd., Zhejiang Jinko Solar Co., Ltd., Jiangsu Jinko Tiansheng Solar Co., Ltd., Jinkosolar (Chuzhou) Co., Ltd., Jinkosolar (Yiwu) Co., Ltd., and Jinkosolar (Shangrao) Co., Ltd*

Dated: February 25, 2026