## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JINKO SOLAR IMPORT AND EXPORT CO. LTD., *et al.*, <br><br> Plaintiffs, <br><br> TRINA SOLAR CO., LTD., *et al.*, <br><br> Consolidated Plaintiffs, <br> and <br> JA SOLAR TECHNOLOGY YANGZHOU CO., LTD., *et al.*, <br><br> Plaintiff-Intervenors, <br> v. <br> UNITED STATES, <br><br> Defendant, <br> and <br> AMERICAN ALLIANCE FOR SOLAR MANUFACTURING, <br><br> Defendant-Intervenor. | Before: Hon. Claire R. Kelly, <br>            Judge <br><br> Consol. Court No. 22-00219 <br><br> **NON-CONFIDENTIAL VERSION** <br><br> Business Proprietary Information Removed from: Pages 3-5 |

### DEFENDANT-INTERVENOR AMERICAN ALLIANCE FOR SOLAR MANUFACTURING'S REPLY COMMENTS ON THE REMAND RESULTS

Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.
Paul A. Devamithran, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the American Alliance for Solar Manufacturing*

**Dated: February 25, 2026**

**Consol. Ct. No. 22-00219** NON-CONFIDENTIAL VERSION

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | ARGUMENT | 2 |
| | A. Commerce's Selection of the Solar Glass Surrogate Value Was Supported by Substantial Evidence and Otherwise Lawful, and Plaintiffs Arguments to the Contrary are Unavailing | 2 |
| |     1. Commerce Reasonably Found the Romanian HTS Data to Be Superior as to Product Specificity and Reasonably Departed from the Primary Surrogate Country for Solar Glass Surrogate Values | 2 |
| |     2. Commerce Reasonably Found that Respondents' Solar Glass Is Not Excluded from Romanian HTS 7007.19.80 | 6 |
| | B. Commerce Applied a Lawful Methodology When Using AFA to Fill the Gaps in the Record Resulting from Risen's Failure to Report Certain FOPs | 9 |
| III. | CONCLUSION | 11 |

**Consol. Ct. No. 22-00219**  NON-CONFIDENTIAL VERSION

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Diamond Sawblades Mfrs.' Coal. v. United States*,
   No. 17-00167, slip op. 18-146 (Ct. Int'l Trade Oct. 23, 2018) ................................8

*Diamond Sawblades Mfrs.' Coal. v. United States Coal. v. United States*,
   986 F.3d 1351 (Fed. Cir. 2021) ................................................................................10

*Jinko Solar Imp. and Exp. Co., Ltd. et. al. v. United States*,
   No. 22-00219, slip op. 24-53 (Ct. Int'l Trade May 1, 2024), ..................................6

*Jinko Solar Imp. and Exp. Co., Ltd. et. al. v. United States*,
   No. 22-00219, slip op. 25-67 (Ct. Int'l Trade May 30, 2025), .............................1, 9

*JTEKT Corp. v. United States*,
   33 C.I.T. 1797, 675 F. Supp. 2d 1206 (Ct. Int'l Trade 2009) ................................10

*Maverick Tube Corp. v. United States*,
   857 F.3d 1353 (Fed. Cir. 2017) .................................................................................9

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ...................................................................................................10

*Mueller Comercial De Mexico v. United States*,
   753 F.3d 1227 (Fed. Cir. 2014) .........................................................................10, 11

**Statutes**

19 U.S.C. § 1677e(b) .........................................................................................................9

19 U.S.C. § 1677e(b)(2) ....................................................................................................9

Trade Preferences Extension Act of 2015, P.L. 114-27 Sec. 502, 129 Stat. 362,
   383-84 (June 29, 2015) ..............................................................................................9

**Administrative Materials**

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules,
   From the People's Republic of China*, 85 Fed. Reg 62,275 (Dep't Commerce
   Oct. 2, 2020) .............................................................................................................5

**Consol. Ct. No. 22-00219**                                              NON-CONFIDENTIAL VERSION

**Other Authorities**

Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc.
    No. 103-316, vol. I (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040 ........................................... 9

I.     **INTRODUCTION**

On behalf of Defendant-Intervenor the American Alliance for Solar Manufacturing ("Defendant-Intervenor" or "Alliance"), we respectfully submit the following response to comments on the Department of Commerce's ("Commerce") second remand redetermination, Letter from Jack Dunkelman, Att'y, Off. of the Chief Couns. for Trade Enf't & Compliance, to Mario Toscano, Clerk of the Court, U.S. Court of Int'l Trade, re: *Redetermination Pursuant to Court Remand Order in Jinko Solar Import and Export Co., Ltd., et. al. v. United States, Consol. Court No. 22-00219* (Sep. 26, 2025), ECF No. 148 ("Second Remand Redeter."), filed by consolidated plaintiffs Jinko Solar Import and Export Co. Ltd., Et Al., ("Jinko") and Risen Energy Co., Ltd. ("Risen") and plaintiff-intervenors JA Solar Technology Yangzhou Co., Ltd., Et Al. ("JA Solar"), BYD (Shangluo) Industrial Co., Ltd. ("BYD"), (collectively "Plaintiffs" or "Respondents"). *See* Pl.'s Comments on Commerce's Remand Redeter. (Jan. 5, 2026), ECF No. 159; Pl.'s Comments on Commerce's Remand Redeter. (Jan. 5, 2026), ECF No. 160 ("Jinko Comments"); Pl.'s Comments on Commerce's Remand Redeter. (Jan. 5, 2026), ECF No. 163 ("BYD Comments"); Pl.'s Comments on Commerce's Remand Redeter. (Jan. 5, 2026), ECF No. 164 ("Risen Comments").

Contrary to the arguments raised by the Plaintiffs, Commerce continues to properly value solar glass using import prices under Romanian Harmonized Tariff Schedule ("HTS") category 7007.19.80 and to properly base Risen's dumping margin, in part, on facts available with adverse inferences ("AFA"). Commerce provided additional explanation for each of these determinations, and Commerce's remand results are consistent with the Court's May 30, 2025 opinion. *Jinko Solar Imp. and Exp. Co., Ltd. et. al. v. United States*, No. 22-00219, slip op. 25-67 (Ct. Int'l Trade May 30, 2025), ECF No. 132 ("*Jinko II*"). The Court should therefore sustain Commerce's second

**Consol. Ct. No. 22-00219**                                                                 NON-CONFIDENTIAL VERSION

remand redetermination, as it is supported by substantial evidence and otherwise in accordance with law.

II.     **ARGUMENT**

   A.   **Commerce's Selection of the Solar Glass Surrogate Value Was Supported by Substantial Evidence and Otherwise Lawful, and Plaintiffs Arguments to the Contrary are Unavailing**

In the second remand redetermination, Commerce correctly continues to use Romanian Harmonized System ("HS") number 7007.19.80 instead of Malaysian HS 7007.19.90 to value solar glass, despite Malaysia being the primary surrogate country. Plaintiffs' arguments to the contrary are unavailing.

   1.   *Commerce Reasonably Found the Romanian HTS Data to Be Superior as to Product Specificity and Reasonably Departed from the Primary Surrogate Country for Solar Glass Surrogate Values*

Plaintiffs argue that by continuing to rely on Romanian HTS data, Commerce is not complying with the Court's remand order because Commerce is simply repeating "prior rejected arguments regarding inaccuracies" created by using Malaysian HTS data. Risen Comments at 3; *see also* Jinko Comments at 7; BYD Comments at 3. Though Commerce's ultimate conclusion is indeed the same on second remand, *i.e.*, that Romanian HTS data is superior to Malaysian HTS data for valuing solar glass, Plaintiffs ignore the substance of Commerce's reasoning, which is more fully explained. As Commerce explained in its second remand redetermination, and as Defendant-Intervenor noted in comments on the second remand redetermination, using Malaysian surrogate value data – which is reported in square meters – is inherently problematic and highly distortive, as it fails to capture the physical variances of a three-dimensional piece of glass. *See* Second Remand Redeter. at 17-21. Def.-Int. Comments on Commerce's Remand Redeter (Jan. 5, 2026), ECF No. 166 at 2-4 ("Def.-Int. Comments"). The thickness, and thus the weight, of a square

2

Case 1:22-cv-00219-CRK   Document 177   Filed 02/26/26   Page 7 of 16

Consol. Ct. No. 22-00219         BUSINESS PROPRIETARY        NON-CONFIDENTIAL VERSION
                                 INFORMATION HAS BEEN DELETED

meter of solar glass varies. Second Remand Redeter. at 18. Indeed, the record demonstrates that

[

]. *See* Letter from Grunfeld, Desiderio, Lebowitz, Silverman, & Klestadt, LLP to Sec'y Commerce, re: *Jinko Solar's Redacted Case Brief in the 8th Administrative Review of the Antidumping Duty Order on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from the People's Republic of China (A-570-979)* (May 27, 2022), C.R. 494-496, P.R. 446-448 at Attachment 4; Letter from DeKieffer & Horgan, PLLC to Sec'y Commerce, re: *Crystalline Silicon Photovoltaic Cells from the People's Republic of China: Case Brief* (Jan. 28, 2022) at C.R. 481-482, P.R. 421 at Attachment 1. The same is true for Malaysian solar glass, but these differences cannot be accounted for with record evidence.

There can be no single universal conversion to accurately represent the value of a square meter of solar glass, which makes the use of Malaysian HTS data speculative at best. In other words, two pieces of solar glass could have the same square meter measurements but vastly different thickness. Relying on a cost per square meter would result in both pieces of glass being valued the same, notwithstanding the fact that the two pieces would have different actual values reflecting their different thicknesses. This would distort Commerce's calculation of normal value on a CONNUM-specific basis, contrary to Plaintiffs' claims. Risen Comments at 5. While Commerce's first remand redetermination focused on the distortions resulting from conversion of the Respondents' solar glass from cost per unit to cost per square meter, Commerce's second remand redetermination explains the distortions and inaccuracies inherent in using Malaysian HTS data at all, which is based on square meters and provides no basis of comparison for the thickness/weight of the solar glass.

3

Case 1:22-cv-00219-CRK   Document 177   Filed 02/26/26   Page 8 of 16

Consol. Ct. No. 22-00219    BUSINESS PROPRIETARY        NON-CONFIDENTIAL VERSION
                            INFORMATION HAS BEEN DELETED

Commerce did not simply "{give} up the effort to follow the Court's instructions" to use a conversion factor, as Plaintiffs claim. *See* Risen Comments at 5. Instead, Commerce explained why converting from per piece to per-square-meter basis in order to use Malaysian HTS data would not just require distortive conversions, it would also result in a fundamentally distortive comparison. As Commerce explained in its second remand redetermination and as the Alliance noted in Comments on the Remand Redetermination, record evidence does not demonstrate that Malaysian glass imports during the period of review had the same thickness or same quantities of glass for each thickness as the respondents' glass imports. It would therefore be unreasonable and unsupported by the record to conclude that the overall average value of glass per square meter derived from Malaysian import data is representative of the average value of glass used by the respondents. *See* Second Remand Redetermination at 19.

Plaintiffs argue that "{i}t is not 'complex' for Commerce to calculate a CONNUM-specific conversion ratio based on Respondents' data on the record" because Respondents "not only submitted weight data, but also submitted dimension." Risen Comments at 6. But this data was just for the Respondents' own solar glass. This is not the only information that is required for an accurate comparison. What is needed are the details of the glass imported into Malaysia under HTS 7007.19.90, in order to convert that data from square meters to kilograms.

There was no information on the weight of those Malaysian glass imports that would establish any correlation to the respondents' proposed conversion factor. Simply comparing cost per square meter of Respondents' solar glass to the cost per square meter of Malaysian solar glass would not be an apples-to-apples comparison because it would not account for differences in thickness or weight. The Plaintiffs admit that each respondent had a range of different conversion factors: "Jinko had conversions per purchase between [    ] kg/M2," and "Risen had conversion

4

Case 1:22-cv-00219-CRK   Document 177   Filed 02/26/26   Page 9 of 16

Consol. Ct. No. 22-00219   BUSINESS PROPRIETARY   NON-CONFIDENTIAL VERSION
INFORMATION HAS BEEN DELETED

per purchase between [    ] kg/M." Risen Comments at 9. Plaintiff argues that the glass conversion factors on the record "constitute{} substantial evidence that Malaysian HTS 7007.19.90 imported glass, being a part of the same pool of internationally traded glass, should share similar average physical characteristics, including average thickness." Jinko Comments at 22-23. This *assumption* is not "substantial evidence." Moreover, it is demonstrably false.

Commerce has previously noted that "{t}he thickness of Chinese tempered glass can range from 3 mm to 19 mm or more," whereas "UN COMTRADE data for Malaysia HTS 7007.19 shows weight variations from 2 to 153 kg per square meter." *See* Issues and Decision Memorandum accompanying *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 85 Fed. Reg 62,275 (Dep't Commerce Oct. 2, 2020) (final results of antidumping duty admin. rev. and final deter. of no shipments; 2017-2018) at 26, n.119 (internal citations omitted) ("Solar Final IDM 2017-2018"). There is zero basis in the record to simply assume that Malaysian glass imported under 7007.19.90 is the same thickness and/or weight as the Respondents' solar glass. Since neither the thickness nor the weight of Malaysian solar glass can be deduced from the record, it would be unreasonable for Commerce to rely on Malaysian import data to value the Respondents' solar glass input – particularly when more accurate surrogate value information, which actually accounts for differences in weight, is readily available.

In other words, whether or not the respondents are able to report their glass factors of production ("FOP") on a square meter basis does not eliminate the distortive effect of using the Malaysian surrogate value, as there is a distortion inherent in the fact that the surrogate value itself is reported on a square meter basis. Because the Romanian surrogate value data are reported as a cost per kilogram, the concerns that arise from valuing a three-dimensional product based on a

Case 1:22-cv-00219-CRK    Document 177    Filed 02/26/26    Page 10 of 16

Consol. Ct. No. 22-00219                                              NON-CONFIDENTIAL VERSION

two-dimensional cost are largely eliminated. Thus, Commerce's determination that the Romanian HTS data is superior to the Malaysia HTS data for the purposes of valuing respondents' solar glass is supported by substantial evidence, and Respondents' arguments to the contrary lack merit.

### 2. *Commerce Reasonably Found that Respondents' Solar Glass Is Not Excluded from Romanian HTS 7007.19.80*

Plaintiffs argue that Commerce's analysis of the exclusions in Romanian HTS 7007.19.80 is not consistent with the Court's remand order. Risen Comments at 10-12; Jinko Comments at 7-14. But Commerce has thoroughly explained in its second remand redetermination why none of the exclusions apply. In *Jinko I*, the Court found that Commerce did not adequately address concerns regarding the specificity of the Romanian HTS category. *Jinko Solar Imp. and Exp. Co., Ltd. et. al. v. United States*, No. 22-00219, slip op. 24-53 (Ct. Int'l Trade May 1, 2024), ECF No. 76 ("*Jinko I*"). As the Alliance noted in Comments on the Remand Redetermination, the Court specifically took issue with Commerce's discussion of the exclusions to the Romanian HTS category of glass that limits light transmission (unlike solar glass, which is designed to absorb light). Def.-Int. Comments at 4. The Court noted that the exclusion of "glass of a size and shape suitable for incorporation into motor vehicles, aircraft, spacecraft, vessels and other vehicles" does not have a light-limiting characteristic and that Commerce's discussion of the exclusions was therefore deficient because it did not address this "size and shape" exclusion. Second Remand Redeter. at 22.

Commerce reasonably explained in its second remand redetermination, however, that the agency discussed the limit-limiting properties of the set of glass exclusions that respondents argued encompassed solar glass, *e.g.*, glass that is enameled, colored throughout the mass, opacified, flashed or that has a reflecting layer. Commerce explained in its first remand redetermination that all of these exclusions share a defining, light-limiting characteristic that solar glass does not. Letter

6

Consol. Ct. No. 22-00219                                                                     NON-CONFIDENTIAL VERSION

from W. Mitch Purdy, Att'y, Off. of the Chief Couns. for Trade Enf't & Compliance, to Mario Toscano, Clerk of the Court, U.S. Court of Int'l Trade, re: *Redetermination Pursuant to Court Remand Order in Jinko Solar Import and Export Co., Ltd., et. al. v. United States, Consol. Court No. 22-00219* (Aug. 29, 2024), ECF No. 89 ("First Remand Redeter."). As Commerce further explained in its second remand redetermination and as the Alliance discussed in Comments on the Remand Redetermination, respondents have not argued (and cannot argue) that solar glass falls within the "size and shape" exclusion, which relates to sizes and shapes of glass used in vehicles. In fact, this same "size and shape" exclusion is present in the Malaysian HTS. *See* Second Remand Redeter. at 23-24; Def. Int. Comments at 5-6.

Plaintiffs argue that Commerce's "admission" that vehicular glass is similar only to the other vehicular glass "contradicts Commerce's rationale that all excluded exemplars in Romanian HTS 7007.19.80 have light limited characteristics." Jinko Comments at 8. This misstates Commerce's rationale. As Commerce explained in its second remand redetermination, the agency focused on the light-limiting exclusions on first remand because the agency was directly addressing respondents' invocation of that specific set of exclusions. Second Remand Redeter. at 22-23. Indeed, the Romanian HTS 7007.19.80 contains two cognizable and logically grouped sets of exclusions: one set of exclusions for glass with light limiting properties, *i.e.,* "enamelled, coloured throughout the mass, pacified, flashed or with an absorbent or reflecting layer," and another set of exclusions for types of specialty vehicular glass, *i.e.* "glass of size and shape suitable for incorporation in motor vehicles, aircraft, spacecraft, vessels, and other vehicles." That there are two cognizable groupings of exclusions only supports Commerce's reasonable conclusion that each grouping shares a common characteristic.

7

Commerce only addressed the first grouping in its first remand redetermination because that is the grouping that Respondents claimed encompassed solar glass via the "absorbent or reflecting layer" exemplar. In response to that argument, Commerce reasoned that Respondents' solar glass did not share the common characteristic of that grouping, *i.e.*, light limiting properties. In so far as it needed to be stated explicitly, Commerce has now clarified that Respondents' solar glass also does not share the common characteristic of the vehicular glass group. Second Remand Redetermination at 5.

As the Alliance noted in Comments on the Remand Redetermination, Commerce has also demonstrated why the Romanian import data have a higher degree of specificity than the Malaysian import data. Def.-Int. Comments at 4-5. As Commerce has explained in the past: "Bulgaria and Romania HTS 7007.19.80 covers tempered glass used in solar panels; the specific type of glass used by solar panel producers. In contrast, Malaysia HTS 7007.19.9000 is broader, covering all types of tempered glass other than automotive glass." *See* Solar Final IDM 2017-2018 at 26; *see also* First Remand Redeter. at 16-17. While Commerce has a preference for using surrogate values from the primary surrogate country, the Court has made clear that this preference does not supersede questions regarding the suitability of the primary surrogate country's data. *See, e.g., Diamond Sawblades Mfrs.' Coal. v. United States*, No. 17-00167, slip op. 18-146 (Ct. Int'l Trade Oct. 23, 2018) at 25 ("The regulatory preference for valuing inputs for a {non-market economy} respondent's production using data from a single 'primary' surrogate country has been held insufficient to explain decisions to reject data from a non-primary surrogate country if questions remain unanswered as to the suitability of the primary surrogate country data"). Here Romanian data are clearly preferable because they are specific to the solar glass used by respondents and they do not suffer from the same fundamental inaccuracies resulting from

Case 1:22-cv-00219-CRK    Document 177    Filed 02/26/26    Page 13 of 16

Consol. Ct. No. 22-00219                                    NON-CONFIDENTIAL VERSION

comparing three dimensional solar glass on the basis of a two dimensional unit of measurement, *i.e.*, square meters. Accordingly, the Court should sustain Commerce's use of the import data under Romanian HS 7007.19.80 as the surrogate value for solar glass.

    **B.    Commerce Applied a Lawful Methodology When Using AFA to Fill the Gaps in the Record Resulting from Risen's Failure to Report Certain FOPs**

Plaintiffs argue that Commerce's calculation methodology for applying AFA is unlawful and inconsistent with the Court's remand decision. *See* Risen Comments at 14. In its remand order, the Court instructed Commerce to explain why (i) Risen's missing FOP information is indicative of rates higher than those calculated using the highest consumption quantity that was reported for a particular input for any CONNUM on the record and (ii) the rate it chose is reasonable. *See Jinko II* at 32. Commerce has provided fulsome explanations addressing these issues on remand.

As the Alliance noted in Comments on the Remand Redetermination, Commerce is granted a significant amount of discretion in choosing among information to use to apply AFA. 19 U.S.C. § 1677e(b); *see also* Sec. 502 of the Trade Preferences Extension Act of 2015, P.L. 114-27, 129 Stat. 362, 383-84 (June 29, 2015). The statute states that "{a}n adverse inference under paragraph (1)(A) may include reliance on information derived from . . . any other information placed on the record." 19 U.S.C. § 1677e(b)(2). In using AFA, Commerce is directed to "ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. I, at 870 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4199. Put another way, "{t}he purpose of the adverse facts statute is 'to provide respondents with an incentive to cooperate' with {the Department's} investigation." *Maverick Tube Corp. v. United States*, 857 F.3d 1353, 1360 (Fed. Cir. 2017). As such, as the U.S. Court of Appeals for the Federal Circuit has recognized, the Department may rely on facts "with some built-in increase intended as a deterrent to non-

compliance." *Diamond Sawblades Mfrs.' Coal. v. United States*, 986 F.3d 1351, 1367 (Fed. Cir. 2021). Without an actual adverse impact, there is no incentive for respondents to cooperate, and the purpose of the statute cannot be effectuated.

While Plaintiffs claim that Commerce has chosen an AFA methodology that "effectively resulted in punishment instead of inducing cooperation," Risen Comments at 16, Commerce lawfully and reasonably used an alternative calculation methodology designed to have a "sufficiently adverse" impact in order to actually incentivize cooperation in future proceedings. This is within the agency's discretion, which is not bound to the same methodology for applying AFA as it has in past reviews, so long as it supports that change with a reasoned explanation. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983); *JTEKT Corp. v. United States*, 33 C.I.T. 1797, 1830, 675 F. Supp. 2d 1206, 1237 (Ct. Int'l Trade 2009) ("{The Department} ordinarily may change a methodology provided it states its rationale for doing so and provided the stated rationale is reasonable.") (quoting *NMB Singapore Ltd. v. United States*, 557 F.3d 1316, 1328 (Fed. Cir. 2009)). Indeed, limiting Commerce to using the same methodology for applying AFA as it has in the past precludes future inducement if that methodology failed to induce cooperation in the past.

In its second remand redetermination, Commerce rightly noted that it used Risen's highest consumption quantities as AFA in the two administrative reviews preceding this review, but that approach did not induce cooperation from Risen. Second Remand Redeter. at 31-32. Thus, using a new methodology that adds a "built-in increase" is necessary to deter non-cooperation. *Id.* at 14. Contrary to Plaintiff's claims (Risen Comments at 16-17), Commerce's reasoning and chosen methodology is fully-consistent with the Court of Appeals for the Federal Circuit's decision in *Mueller Comercial De Mexico v. United States,* which allows for just such a "built-in increase

10

intended as a deterrent to noncompliance." *Mueller Comercial De Mexico v. United States*, 753 F.3d 1227, 1234 (Fed. Cir. 2014).

Accordingly, the Court should sustain Commerce's use of its stated methodology for setting the consumption quantities of Risen's unaffiliated suppliers FOP.

### III. <u>CONCLUSION</u>

For the reasons detailed above, the Alliance respectfully submits that this Court should affirm in full the second remand results of Commerce's eighth administrative review of the Solar I antidumping duty order.

Respectfully submitted,

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.
Paul A. Devamithran, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the American Alliance for Solar Manufacturing*

Dated: February 25, 2026

**CERTIFICATE OF COMPLIANCE**

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Reply Comments on the Remand Results, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2026), is 3,201 words.

<u>/s/ Timothy C. Brightbill</u>
(Signature of Attorney)

<u>Timothy C. Brightbill</u>
(Name of Attorney)

<u>American Alliance for Solar Manufacturing</u>
(Representative Of)

<u>February 25, 2026</u>
(Date)