**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**JINKO SOLAR IMPORT AND EXPORT CO. LTD., *et al.*,**

**Plaintiffs,**

**TRINA SOLAR CO., LTD., *et al.*,**

**Consolidated Plaintiffs,**

**and**

**JA SOLAR TECHNOLOGY YANGZHOU CO., LTD., *et al.*,**

**Plaintiff-Intervenors,**

**v.**

**UNITED STATES,**

**Defendant,**

**and**

**AMERICAN ALLIANCE FOR SOLAR MANUFACTURING,**

**Defendant-Intervenor.**

**Before: Hon. Claire R. Kelly, Judge**

**Consol. Court No. 22-00219**

**DEFENDANT-INTERVENOR AMERICAN ALLIANCE FOR SOLAR MANUFACTURING'S COMMENTS ON THE REMAND RESULTS**

**Timothy C. Brightbill, Esq.**
**Laura El-Sabaawi, Esq.**
**Paul A. Devamithran, Esq.**

**WILEY REIN LLP**
**2050 M Street, NW**
**Washington, DC 20036**
**(202) 719-7000**

***Counsel to the American Alliance for Solar Manufacturing***

**Dated: September 14, 2026**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................ 1
II. ARGUMENT ........................................................................ 1
III. CONCLUSION ........................................................................ 5

**Consol. Ct. No. 22-00219**

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Diamond Sawblades Mfrs.' Coal. v. United States*,
No. 17-00167, slip op. 18-146 (Ct. Int'l Trade Oct. 23, 2018)....................4

*Jinko Solar Import and Export Co., Ltd. et. al. v. United States*,
No. 22-00219, slip op. 26-30 (Ct. Int'l Trade Mar. 30, 2026)....................1, 2, 3, 4

*Jinko Solar Import and Export Co., Ltd. et. al. v. United States*,
No. 22-00219, slip op. 25-67 (Ct. Int'l Trade May 30, 2025)....................1, 2, 6

*Jindal Poly Films Ltd. of India v. United States*,
439 F. Supp. 3d 1354 (Ct. Int'l Trade 2020). ....................2

*Mittal Steel Point Lisas Ltd. v. United States*,
548 F.3d 1375 (Fed. Cir. 2008)....................2

**Administrative Materials**

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 85 Fed. Reg 62,275 (Dep't Commerce Oct. 2, 2020) ....................3

## I. INTRODUCTION

On behalf of Defendant-Intervenor the American Alliance for Solar Manufacturing (the "Alliance"), we hereby submit the following comments on the August 13, 2026 third remand results issued by the U.S. Department of Commerce ("Commerce"). Letter from Jack Dunkelman, Att'y, Off. of the Chief Counsel for Trade Enf't & Compliance, to Gina Justice, Clerk of the Court, U.S. Court of Int'l Trade, re: *Redetermination Pursuant to Court Remand Order in Jinko Solar Import and Export Co., Ltd., et. al. v. United States, Consol. Court No. 22-00219* (Aug. 13, 2026), ECF No. 185 ("Third Remand Redetermination"). Pursuant to the Court's instructions on second remand, Commerce changed its valuation methodology for solar glass, using import prices under Malaysian Harmonized Tariff Schedule ("HTS") category 7007.19.90 instead of Romanian HTS category 7007.19.80. While the Alliance recognizes that Commerce's third remand results are consistent with the Court's March 30, 2026 opinion, *Jinko Solar Import and Export Co., Ltd. et. al. v. United States*, No. 22-00219, slip op. 26-30 (Ct. Int'l Trade Mar. 30, 2026), ECF No. 180 ("*Jinko III*"), the Alliance continues to believe that Commerce's original valuation methodology for solar glass under the Romanian HTS category is the more appropriate choice.

## II. ARGUMENT

In the second draft remand results, Commerce changed its solar glass valuation methodology from the underlying administrative proceeding to use Malaysian HS 7007.19.90 instead of Romanian Harmonized System ("HS") number 7007.19.80 to value solar glass. *Draft Results of Redetermination Pursuant to Court Remand* (Aug. 19, 2025), 2RPR 1. In comments on those draft remand results, the Alliance explained that the agency should instead continue to value solar glass under the Romanian HTS category, including because it provides superior data that is more specific to solar glass

consumed by the respondents than the Malaysian data.[1] Letter from Wiley Rein LLP to Sec'y of Commerce, re: *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China - Remand Slip Op. 25-67: Comments on Draft Results of Redetermination Pursuant to Court Remand* (Aug. 29, 2025), 2RPR 13, at 3-8. When submitting the agency's final second remand results to the Court, Commerce adopted the Alliance's arguments in large part and properly reverted back to valuing solar glass under the Romanian HTS category. *See* Letter from Jack Dunkelman, Att'y, Off. of the Chief Counsel for Trade Enf't & Compliance, to Mario Toscano, Clerk of the Court, U.S. Court of Int'l Trade, re: *Redetermination Pursuant to Court Remand Order in Jinko Solar Import and Export Co., Ltd., et. al. v. United States, Consol. Court No. 22-00219* (Sep. 26, 2026), ECF No. 148 ("Second Remand Redetermination"). Commerce explained, in part, that solar glass is not excluded from the Romanian HTS category because the exclusions to the Romanian HTS category (*i.e.*, "enamelled, coloured throughout the mass, opacified, flashed or with an absorbent or reflecting layer, glass of size and shape suitable for incorporation in motor vehicles, aircraft, spacecraft, vessels and other vessels") are logically divided into two categories, the first of which are all light-limiting and the second of which are incorporated into vehicles, and neither of those categories are applicable to solar glass. *See* Second Remand Redetermination at 22-24. But in *Jinko III*, the Court remanded Commerce's remand redetermination a third time, finding that

[1] The Alliance fully explained its views regarding the appropriateness of Romanian HTS data in comments in opposition to Commerce's second draft remand results, and Commerce changed its draft second remand results to adopt those views in its final second remand results filed with the Court. *See* Second Remand Redetermination. Because the Court rejected those views and left Commerce no choice but to change its valuation methodology for solar glass from the Romanian to the Malaysian HTS category, the Alliance did not submit comments on the third draft remand results that would have been functionally identical to the comments on the second draft remand results on this issue. The Alliance did not deprive Commerce of notice regarding any argument the Alliance made before and reiterates now, and because it would have been futile for Alliance to comment on Commerce's third draft remand results, the Alliance did not fail to exhaust administrative remedies by urging the Court to reconsider those same arguments now. *See, e.g.*, *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1384 (Fed. Cir. 2008); *Jindal Poly Films Ltd. of India v. United States*, 439 F. Supp. 3d 1354, 1364 (Ct. Int'l Trade 2020).

Commerce's interpretation of the exclusion is "flawed" and "an unreasonable interpretation of the exclusions." *Jinko III* at 14-15. The Court held that "{b}ecause the record contains evidence that the Romanian HTS classification excludes anti-reflective solar glass, Commerce cannot reasonably reply on the Romanian HTS to calculate the normal value of Jinko's solar glass." *Id.* at 16. Accordingly, Commerce changed its valuation methodology in its third remand redetermination to valuing solar glass under the Malaysian HTS category.[2]

The Alliance respectfully reiterates that Commerce's original interpretation of the Romanian HTS category was reasonable. As Commerce explained in its second remand redetermination, respondents never argued that solar glass falls within the "size and shape" exclusion, which relates to sizes and shapes of glass used in vehicles, and in fact, this same "size and shape" exclusion is present in the Malaysian HTS. *See* Second Remand Redetermination at 23-24. Commerce reasonably grouped the remaining exclusions, *i.e.*, those that were unique to Romanian HTS 7007.19.80, and found they all shared the common characteristic of limiting light and therefore do not apply to solar glass. *See id*.

Not only did Commerce adequately address concerns regarding the specificity of Romanian import data, the agency also previously demonstrated why the Romanian import data have a higher degree of specificity than the Malaysian import data. As Commerce has explained in the past: "Bulgaria and Romania HTS 7007.19.80 covers tempered glass used in solar panels; the specific type of glass used by solar panel producers. In contrast, Malaysia HTS 7007.19.9000

---

2 The Court also permitted Commerce to reopen the administrative record to obtain additional information from the respondents needed to select a surrogate value for solar glass. *Jinko III* at 16. Because Jinko and Risen had not previously reported glass weight, length, and width data on a CONNUM-specific basis, Commerce "reopened the record and obtained CONNUM-specific kilogram per square meter glass conversion factors from both companies." Third Remand Redetermination at 6. The Alliance acknowledges that this new data, which was not previously on the record, allows for a better kilogram per square meter conversion than was previously possible. The Alliance maintains, however, that Romanian HTS data – which requires no conversion whatsoever – is more specific to solar glass and that Commerce reasonably relied on Romanian HTS data in the underlying administrative review.

is broader, covering all types of tempered glass other than automotive glass." *See* Issues and Decision Memorandum accompanying *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 85 Fed. Reg 62,275 (Dep't Commerce Oct. 2, 2020) (final results of antidumping duty admin. rev. and final deter. of no shipments; 2017-2018) at cmt. 3; *see also* Letter from W. Mitch Purdy, Att'y, Off. of the Chief Counsel for Trade Enf't & Compliance, to Mario Toscano, Clerk of the Court, U.S. Court of Int'l Trade, re: *Redetermination Pursuant to Court Remand Order in Jinko Solar Import and Export Co., Ltd., et. al. v. United States, Consol. Court No. 22-00219* (Aug. 29, 2024), ECF No. 90 ("First Remand Redetermination") at 35. While the Department has a preference for using surrogate values from the primary surrogate country, the Court has made clear that this preference cannot be used to overcome or ignore questions regarding the suitability of the primary surrogate country's data. *See, e.g., Diamond Sawblades Mfrs.' Coal. v. United States,* No. 17-00167, slip op. 18-146 (Ct. Int'l Trade Oct. 23, 2018) at 34 ("The regulatory preference for valuing inputs for a {non-market economy} respondent's production using data from a single 'primary' surrogate country has been held insufficient to explain decisions to reject data from a non-primary surrogate country if questions remain unanswered as to the suitability of the primary surrogate country data."). Here, the Malaysian and Romanian data are not comparable—the Romanian data remain preferable because they are specific to the solar glass used by respondents.

**Consol. Ct. No. 22-00219**

## III. CONCLUSION

For the reasons detailed above, the Alliance respectfully reiterates that Commerce's prior analysis of the solar glass valuation issue, as articulated in the agency's second remand results of Commerce's eighth administrative review of the Solar I antidumping duty order, were reasonable and supported by substantial evidence. The Alliance recognizes that Commerce's third remand results are consistent with the Court's remand order in *Jinko III* but reiterates that Commerce's prior selection of the Romanian HTS category to value solar glass remains preferrable, even on the expanded record.

Respectfully submitted,

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.
Paul A. Devamithran, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the American Alliance for Solar Manufacturing*

Dated: September 14, 2026

# CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Comments on the Remand Results, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2021), is 1,468 words.

*/s/ Timothy C. Brightbill*
(Signature of Attorney)

Timothy C. Brightbill
(Name of Attorney)

American Alliance for Solar Manufacturing
(Representative Of)

September 14, 2026
(Date)